Joseph Antonelli, Esq. (SBN 137039)
JAntonelli@antonellilaw.com
Janelle Carney, Esq. (SBN 201570)
JCarney@antonellilaw.com
**LAW OFFICE OF JOSEPH ANTONELLI**
14758 Pipeline Ave, Suite E, 2nd Floor
Chino Hills, CA 91709
Tel.: (909) 393-0223 / Fax: (909) 393-0471

Daniel A. Conforti, Esq. (SBN 180080)
Dan@cocalaw.com
Michael J. Carras, Esq. (SBN 244331)
Mike@cocalaw.com
**CONFORTI & CARRAS, APC**
151 N. Kraemer Blvd., Suite 204
Placentia, CA 92870
Tel:  (714) 577-1071/ Fax: (714) 577-0711

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| BRYAN SHIOSAKA, an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, and DOES 1 through 50<br><br>Defendants | Case No.: CV 12 1268-CAS (CWx)<br><br>Honorable Christina A. Snyder<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     July 1, 2013<br>Time:    10:00 a.m.<br>Dept.:    5<br><br>Action Filed:  December 23, 2011 |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................. 1

II. THE CLASS REPRESENTED ............................................. 2

III.  THE TWO-STEP APPROVAL PROCESS ...................................... 2

IV. THE PRESUMPTION OF FAIRNESS .......................................... 5

V.  PROPOSED SHARE PER CLASS MEMBER ............................... 6

   1.  Class Member Compensation ................................... 6

VI.  LIMITED STANDING TO OBJECT TO PROPOSED SETTLEMENT ..... 12

VII.  SETTLEMENT AGREEMENT AND ACCOMPANYING
DOCUMENTS ..............................................................12

VIII.  THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON
OBJECTIVE EVIDENCE .................................................13

IX.  CONDITIONAL CERTIFCATION OF THE CLASS ...................14

   A.   Class Certification Is Appropriate in this Case...................14

   B.   The Proposed Class is Ascertainable and Numerous ...........15

   C.   Common Issues of Law or Fact Predominate ....................15

   D.   Plaintiff's Claims Are Typical of the Class Claims .............16

   E.   Adequacy of Representation.................................16

X.   PROPOSED SCHEDULE OF SETTLEMENT PROCEEDINGS ..............16

XI.   ACTION REQUESTED AS PART OF THE MOTION FOR
PRELIMINARY APPROVAL ..............................................17

CONCLUSION ...........................................................17

i

Memorandum of Points and Authorities in Support of Plaintiff's Motion for
Conditional Certification and Preliminary Approval of Class Action Settlement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

**Treatises**

Manual for Complex Litigation Second states at §30.44 (1985)............................ 2

Newberg on Class Actions, 3rd Ed., 11.26 .................................................3, 5, 6, 12

**State Cases**

B.W.I. Custom Kitchen v. Owens-Illinois, Inc. (1987) 191 Cal.App.3d 1341 .......16

Classen v. Weller (1983) 145 Cal.App.3d 27 ......................................................16

Clothesrigger, Inc. V. GTE Corp., (1987) 191 Cal.App.3d 605............................15

Dunk v. Ford Motor Co. (1996) 48 C.A.4th 1794 .............................................. 4

Kullar v. Footlocker Retail Inc. 168 Cal. App 4th 116 ....................................... 4

Linder v. Thrifty Oil Co. (2000) 23 Cal. 4th 429..................................................14

Richmond v. Dart Industries (1981) 29 C3d 462..................................................14

Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319................14, 15

Stephens v. Montgomery Ward & Co., Inc. (1987) 193 Cal.App.3d 411..............15

Tidewater Marine Western, Inc. v. Bradshaw (1966) 14 Cal.4th 557 ...................15

**Rules & Statutes**

CCP §382 ...............................................................................................................14

Civil Code §1542....................................................................................................11

IWC Wage Order 4-2001 .......................................................................................15

**Federal Cases**

Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989) ....................................12

Hammon v. Barry, 752 F.Supp 1087 (D.D.C. 1990) ............................................ 5

In re Armored Car Antitrust Litigation, 472 F.Supp 1357 (N.D. Ga. 1979), aff'd in
    part, rev'd in part in 645 F.2d 488 (5th Cir. 1981)................................................ 5

In re Chicken Antitrust Litigation, 560 F.Supp 957................................................ 5

In re School Asbestos Litigation, 921 F.2d 1330 (3rd Cir. 1990) ..........................12

Memorandum of Points and Authorities in Support of Plaintiff's Motion for
Conditional Certification and Preliminary Approval of Class Action Settlement

Mars Steel Corp. v. Continental Illinois National Bank and Trust Co., 834 F.2d 677 ............................................................................................................ 5

Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989) ............................ 5

Sommers v. Abraham Lincoln Federal Savings & Loan Association, 79 F.R.D. 571 (E.D. Pa. 1978)................................................................................. 5

Steinberg v. Carey, 470 F.Supp. 471 (S.D.N.Y. 1979) .......................... 5

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

1  |  This Memorandum is submitted in support of the Plaintiff's Motion for
2  |  Conditional Certification and Preliminary Approval of Class Action Settlement.
3  |  The proposed settlement before this Court will dispose of the entire action as to
4  |  Defendant State Farm Mutual Automobile Insurance Company**.** (hereinafter
5  |  referred to as "Defendant" or "State Farm") except as to any Class Members who
6  |  elect to exclude themselves ("opt-out") from the settlement Class.

## I.  <u>INTRODUCTION</u>

On December 23, 2011, the Complaint in this action was filed in the
Superior Court of the State of California, in and for the County of Los Angeles,
captioned as <u>Bryan Shiosaka v. State Farm Mutual Automobile Insurance</u>
<u>Company</u>, Case No. BC475824.  On or about February 14, 2012, Defendant
removed the matter to federal court.  Thereafter the Plaintiff filed a First Amended
Complaint on May 2, 2013 pursuant to a stipulation and order. (**Antonelli Decl.**
**¶8**)  Plaintiff alleges that he and other hourly non-exempt Automotive Estimatics
Inspector ("AEI") employees employed by State Farm in California have not been
paid all wages due, including but not limited to overtime due to various theories.

The parties served initial discovery and thereafter agreed to an informal
exchange of information in preparation for a formal mediation with Barry
Winograd, Esq.  Plaintiff demanded documents in order to investigate a class wide
certification, liability, merits, and damage analysis.  Defendant provided
voluminous documents, including time records, payroll records, personnel file, and
defendant's policies and procedures.  Plaintiff hired an expert to review the data
and compile damage calculations.  In preparation for that mediation, Plaintiff
prepared a thorough exposure analysis.  The mediation occurred on April 10, 2013
and settled.

/////

---

Memorandum of Points and Authorities in Support of Plaintiff's Motion for
Conditional Certification and Preliminary Approval of Class Action Settlement

The Class Representative and Class Counsel have concluded, after taking into account sharply disputed factual and legal issues involved in this litigation, the risks attending further prosecution, and the substantial benefits received and to be received pursuant to the compromise and settlement of the litigation, that settlement on the terms hereinafter set forth is in the best interest of the class members.

State Farm and Defense Counsel have concluded, after taking into account the sharply disputed factual and legal issues involved in the litigation, the risks attending further defense, the substantial expense and burden of protracted litigation, and their desire to put the controversy to rest, that Settlement on the terms hereinafter set forth is in the best interest of Defendants

## II.
## THE CLASS REPRESENTED

### ("Employees at Issue")

**All current employees who worked for Defendant in California as an hourly non-exempt AEI from December 23, 2007 to May 31, 2013.**

## III.
## THE TWO-STEP APPROVAL PROCESS

Any settlement of class litigation must be reviewed and approved by the Court. This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the Class Members for their comment or objections. The Manual for Complex Litigation Second states at §30.44 (1985),

> A two-step process is followed when considering class settlements … if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

Thus, the preliminary approval of the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." Newberg on Class Actions, 3rd Ed., 11.26.

The procedures for submission of a proposed settlement for preliminary approval are discussed at Newberg on Class Actions, 3rd Ed., §11.24 – 11.26. Newberg observes at §11.24:

> When the Parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement, which is submitted to the court for preliminary approval. The stipulation should set forth the central terms of the agreement, including but not limited to, the amount of the settlement, form of payment, manner of determining the effective date of settlement, and any recapture clause.

While the details of the recovery for each Class Member are set forth in the proposed Settlement Agreement filed concurrently herewith and attached to the Declaration of Joseph Antonelli in support of preliminary approval, the settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk relative to class certification, and the costs of litigation. (**Declaration of Joseph Antonelli ¶9**)

To prevent fraud, collusion, or unfairness to the class, the settlement or dismissal of a class action requires court approval. In order to protect those class members, including the named plaintiffs, whose rights may not have been given due attention by the negotiating parties, the court must determine whether the settlement is fair, adequate, and reasonable. (Dunk v. Ford Motor Co. (1996) 48

C.A.4th 1794.)

While the details of the recovery for each Class Member are set forth in the proposed Settlement Agreement attached to the Declaration of Joseph Antonelli in Support of Preliminary Approval as **Exhibit 1**, the settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk relative to class certification, the costs of litigation, and the financial condition of the defendant. (*See* **Decl. Antonelli ¶9**)

The Court must look to the admissible evidence regarding the following factors specified in <u>Dunk v. Ford Motor Co</u>., supra at 1800-1801:

> A.  Strength of Plaintiff's case;
> B.  The risk, expense, complexity and likely duration of further litigation;
> C.  The risk of maintaining class action status through trial;
> D.  With respect to the amount of the settlement, the number of "cents on the dollar" or percentage of total damages the settlement represents; and
> E.  Presence (or lack thereof) of a governmental participant.

Further the Court must take into consideration the <u>Dunk</u> factors and the additional <u>Kullar</u> factor which is "the most important factor is the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." (<u>Kullar v. Footlocker Retail Inc</u>. 168 Cal. App 4th 116, 118) (See **Decl. Antonelli, ¶10**)

In the case at bar, the settlement is for a maximum amount of $5,000,000.00. The settlement amount balanced against the merits of the Plaintiff's case is strong as all factors listed supra are discussed in detail in the **Declaration of Joseph Antonelli ¶10**, filed concurrently herewith.

/////

/////

4

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

# IV.

## THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. Newberg, §11.51; In re Chicken Antitrust Litigation, 560 F.Supp 957, 962 (N.D. Ga. 1980); Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989); Mars Steel Corp. v. Continental Illinois National Bank and Trust Co., 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. Hammon v. Barry, 752 F.Supp 1087 (D.D.C. 1990); Steinberg v. Carey, 470 F.Supp. 471 (S.D.N.Y. 1979); In re Armored Car Antitrust Litigation, 472 F.Supp 1357 (N.D. Ga. 1979), aff'd in part, rev'd in part in 645 F.2d 488 (5th Cir. 1981); Sommers v. Abraham Lincoln Federal Savings & Loan Association, 79 F.R.D. 571 (E.D. Pa. 1978). This is especially true where, as here, a very experienced, highly regarded neutral mediator, one very familiar with this type of class action in its substance and procedure, presided over the mediation session.

While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly where, as here, they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and have obtained substantial evidence from the opposing party.  See Newberg, §11.47. Here, the Plaintiff's firms involved in the case have a great deal of experience in wage and hour class action litigation. Joseph Antonelli, Janelle Carney of the Law Office of Joseph Antonelli have been approved as Class Counsel in over 100 wage hour class actions.  A sampling of such cases is listed in the Antonelli Declaration.

5

Memorandum of Points and Authorities in Support of Plaintiff's Motion for
Conditional Certification and Preliminary Approval of Class Action Settlement

Additionally, co-counsel, Conforti & Carras, APC are likewise experienced and qualified (**Carras Decl. ¶¶3-4**)  Plaintiff's attorneys and the Class Representative have been actively engaged in resolving this matter, hiring a damage expert at considerable cost to assist with the analysis of the financial records produced by Defendant.

  **The settlement is for a total non-reversionary amount of $5,000,000.00.** Likewise, since there is no reversion to the Defendant, all putative Class Members who do not request exclusion will share proportionately in the settlement based upon their gross earnings during the class period as hourly non-exempt AEI employees. Each class member will receive a claim form that details their approximate settlement share and the amount of wages earned during the class period.

  The settlement amount is fair and reasonable based on a review of all objective evidence.  The party's assessment of the matter is based on extensive research before and during the litigation, and written discovery.  The settlement was further reached after consultation with a damage expert regarding potential damage exposure. (**Decl Antonelli ¶12**)

<h3 style="text-align:center">V. <u>PROPOSED SHARE PER CLASS MEMBER</u></h3>

**1.** <u>**Class Member Compensation**</u>

  Each AEI Class Member who does not request exclusion will receive a check based on the following formula:

    a. Determine the Total Gross Wages, as defined by pertinent pay codes as agreed upon by the Parties, paid to State Farm AEI Non-Exempt Employees during the Class Period ("Total Gross Wages") as provided in the Class List and Data Report.

b.  Determine the portion of the Total Gross Wages paid to State Farm AEI Non-Exempt Employees during the Class Period ("Individual Gross Wages") as provided in the Class List and Data Report.

c.  Use each State Farm AEI Non-Exempt Employee's Individual Gross Wages to determine what percent of the Total Gross Wages was earned by each State Farm AEI Non-Exempt Employee during the applicable Class Period ("Gross Wages Percentage Value").

d.  State Farm AEI Non-Exempt Employees will have the opportunity, should they disagree with State Farm records, to provide documentation and/or an explanation to show contrary evidence of their Individual Gross Wages during the Class Period.  If there is a dispute or contrary evidence, the Claims Administrator will consult with the Parties to determine whether an adjustment is warranted. The Claims Administrator shall determine the eligibility for, and the amounts of, any Individual Settlement Payments under the terms of this Settlement Agreement.  Any disputes (including those concerning the Gross Individual Settlement Amount of each State Farm AEI Non-Exempt Employees) not resolved by the Claims Administrator concerning the administration of the Settlement will be resolved by the Court, venue in United States District Court, Los Angeles, California, under the laws of the State of California.  Prior to any such involvement of the Court, counsel for the Parties will confer in good faith to resolve the dispute without the necessity of involving the Court.

e.  Each State Farm AEI Non-Exempt Employee will be entitled to a percentage of the Net Settlement Amount that is equivalent to

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

his/her Gross Wages Percentage Value ("Gross Individual Settlement Payment"), as described herein.

i    State Farm shall provide AEI Non-Exempt Employees, on a claims-made basis, monetary compensation in the maximum total amount of Five Million Dollars ($5,000,000), less amounts Attorneys' Fees and Costs Awards, Service Awards, Claims Administration Costs, Employer's Share of employment taxes the Net Settlement Amount, the Seventy-Five Percent (75%) of the $15,000.00 Civil Penalty Payment, Twenty-Two Thousand Five Hundred Dollars ($11,250.00), and enhancement payment to the Named Plaintiff (the "Net Settlement Amount" or "NSA").  The monetary compensation shall be divided as follows: (1) State Farm AEI Non-Exempt employees working from December 23, 2007 to December 24, 2011 will receive Ninety-Eight Percent (98%) of the NSA (Time Period 1); and (2) State Farm AEI Non-Exempt Employees working from December 25, 2011 to May 31, 2013 will receive Two Percent (2%) of the NSA (Time Period 2.)  Each State Farm AEI Non-Exempt Employee will be entitled to a percentage of his/her respective portion that is the equivalent of his/her Gross Wages Percentage Value.  If the calculation described above results in a calculated payment to a State Farm AEI Non-Exempt Employee of less than Fifty Dollars ($50), that State Farm AEI Non-Exempt Employee's payment will be increased to Fifty Dollars ($50).  State Farm AEI Non-Exempt Employees will receive a minimum payment of Fifty ($50), so long as such payment will not increase the overall Net Settlement Amount.  If payments

8

pursuant to this paragraph would require an increase in the overall Net Settlement Amount, no increase will be made and each State Farm AEI Non-Exempt Employee will receive an amount equal to the original result of his/her calculated payment, even if that result is less than Fifty Dollars ($50).

f.   The Net Settlement Amount shall include the State Farm AEI Non-Exempt Employees' share of the PAGA Payments remaining after three quarters of the payment is made to the California Labor Workforce Development Agency.  From each State Farm AEI Non-Exempt Employee's Gross Individual Settlement Payment the Parties shall apportion Forty Percent (40%) to wages ("Wage Component") and Sixty Percent (60%) to interest and penalties. The portion of each State Farm AEI Non-Exempt Employee's Gross Individual Settlement Payment that constitutes the Wage Component will be reduced by any required legal deductions for each State Farm AEI Non-Exempt Employee.  Standard employer and employee payroll deductions will be made for state and federal withholding taxes and any other applicable payroll deductions owed by the Participating Class Members as a result of the Wage Component, resulting in a "Net Wage Component."  The Claims Administrator will issue one (1) check and W-2 Form to each Class member for the Wage Component and the interest and penalty portion of the Gross Individual Settlement Payment.  The Claims Administrator or State Farm will detail the gross award and how it breaks down into a wage and penalty portion and provide a net payment for both.  The Claims Administrator along with the check will provide a separate document which is broken down into

9

quarters and it includes the following: A detailed breakdown of the payment, tax withholding, and why they are receiving the check; a W-2; a 1099; and a perforated check at the bottom.

g.   No withholding shall be made on the interest and penalty portion of the Gross Individual Settlement Payment.  The Claims Administrator will issue an IRS Form 1099 for the remaining interest and penalty component.

h.   The Net Wage Component shall be added to the penalties and interest component, resulting in the Net Individual Settlement Payment.

i.   Any and all amounts remaining in the Net Individual Settlement Amount that were not claimed by State Farm AEI Non-Exempt Employees through the claims process shall be distributed to the State Farm AEI Non-Exempt Employees who are Participating Settlement Class Members on a pro rata basis and thereby proportionally increasing the Individual Settlement Payments to the State Farm AEI Non-Exempt Employees who are Participating Settlement Class Members based upon their Gross Wages Percentage Value.

j.   The Claims Administrator shall be responsible for issuing the payments and calculating and withholding all required state and federal taxes.

k.   State Farm will be responsible for paying all employer tax liabilities separate and apart from the Total Maximum Settlement Fund.

In addition to the sums paid to Class Members for compensation of their unpaid overtime and wages the named Plaintiff Bryan Shiosaka will request a

10

litigation enhancement of $20,000.00.  This enhancement take into consideration the risks, time, effort, and expenses incurred by the Named Plaintiff in coming forward to litigate this matter on behalf of all Class Members. Furthermore, the enhancement will also include the Named Plaintiff consideration for executing a Civil Code §1542 General Release.  The settlement is broken down further:

| | | |
|---|---|---|
| 1) | Total Settlement Fund: | $5,000,000.00 |
| 2) | Attorneys' Fees and Costs: | Attorneys' Fees: $1,500,000.00 (30% of the total settlement); Costs: up to $15,000.00, as verified by Class Counsel and approved by the Court |
| 3) | Class Representative Enhancement: | $20,000.00 |
| 4) | Cost to Administer the Settlement: | $25,000.00 |
| 5) | PAGA Payment to LWDA | $11,250.00 (75% of $15,000.00 allocated as PAGA penalties per LC § 2649, et seq. |
| 6) | Employer share of taxes (approx.) | $165,000.00 |
| 6) | Net Settlement Fund: | $3,263,750.00 to be distributed to the class. |

At the very least, the Class Settlement Fund will be $3,263,750.00.  This estimate is based on the court approving all the requested amounts listed above. To the extent any request is not approved, the net Settlement fund will increase accordingly.  To the extent that any estimate is less than stated, the actual numbers will be used to determine the NSF.  Fairness of the settlement is further demonstrated by risks of non-certification, trial or appeal.  It is extremely unlikely

11

that the majority of the current employees in the Class could or would maintain individual actions against Defendant.

## VI.   LIMITED STANDING TO OBJECT TO PROPOSED SETTLEMENT

Non-settling Parties or third Parties sometimes attempt to object to settlements, but the right of non-settling Parties to object even at the final settlement approval hearing, let alone the preliminary approval hearing, is quite limited. As a general rule, only Class Members have standing to object to a proposed settlement. "Beginning from the unassailable premise that settlements are to be encouraged, it follows that to routinely allow non-Class Members to inject their concerns via objection at the settlement stage would tend to frustrate this goal." Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989).

As Newberg observes, even non-settling defendants in a multiple-defendant litigation context have no standing to object to the fairness or adequacy of the settlement by other defendants; they are limited to objecting to any terms that would preclude them from seeking indemnification from the settling defendants. Newberg at §11.55. Since an application is being filed to obtain a good faith determination, no one other than Class Members have standing to object to the proposed settlement. In re School Asbestos Litigation, 921 F.2d 1330 (3rd Cir. 1990).

## VII.   SETTLEMENT AGREEMENT AND ACCOMPANYING DOCUMENTS

The Parties have finalized a formal Settlement Agreement. The Parties are filing all settlement and notice documents with this Motion for Preliminary Approval of Class Action Settlement:  **(1)** Stipulation and Settlement of Class Action Claims (see **Exhibit 1** to the **Declaration of Joseph Antonelli**);

Because this is a non-reversionary settlement, upon the expiration of the

12

Claims/Objection/Exclusion period, Settlement Class members will receive a check for their settlement amount based on the formulas listed supra.  Upon expiration of the settlement checks, i.e., not cashed within number of days after issue, any funds not cashed will escheat in the claimants name to the State of California Industrial Relations Unpaid Wage Fund.  The Class Members will have to submit a timely and valid claim form in order to receive his/her share of the settlement.  The Parties respectfully request that this Court approve those documents to be disseminated to the Class consistent with the manner and timing as set forth in this Memorandum.

The Parties have agreed on Rust Consulting, Inc. ("Rust") as the Claims Administrator and respectfully request that this court appoint Rust to handle the notice and claims administration procedures.

## VIII.  <u>THE SETTLEMENT IS FAIR AND REASONABLE BASED UPON OBJECTIVE EVIDENCE</u>

The settlement that has been reached, subject to this Court's approval, is the product of tremendous effort, time, and expense by the Parties and their counsel.  The settlement was reached after factual and legal research, discovery, informal data exchange, including the plaintiff and class payroll records and sampling of time records, review of thousands of pages of documents, a full-day Mediation with Mr. Barry Winograd, Esq.

The settlement amount is, of course, a compromise figure.  It took into account what State Farm contended were risks that the class would be certified, what State Farm contended were risks regarding proof of overtime, and other defenses asserted by State Farm.  It also took into account the possibility that if a settlement were reached after many months or even years of litigation, the great expenses and attorneys' fees of litigation would cause Defendant to decrease what it was willing to offer.  Furthermore, Plaintiff also took into consideration the time

13

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

delay and financial repercussions in the event of liability trials, numerous damages

trials, and appeal by State Farm.

### IX.   CONDITIONAL CERTIFCATION OF THE CLASS

#### A.   Class Certification Is Appropriate in this Case

The proposed settlement seeks conditional certification of the class.  The

certification of the class is essential to the settlement.

California public policy favors the use of the class action device.

Richmond v. Dart Industries (1981) 29 C3d 462, 469. CCP §382 authorizes class

suits in California when "the questions is one of the common or general interest, of

many persons, or when the parties are numerous, and it is impracticable to bring

them all before the courts, one or more may sue or defend for the benefit of all."

To obtain certification, a party must establish the existence of both an ascertainable

class and a well-defined community of interest among class members.  Linder v.

Thrifty Oil Co. (2000) 23 Cal. 4th 429, 435.  The "community of interest"

requirement depends on three factors: (1) whether common issues of law or fact

predominate; (2) whether the class representatives have claims that are typical of

the class; and (3) whether the class representatives will adequately represent the

class. Richmond, 29 Cal.3d at 470.  Because the policy of favoring use of class

actions is so strong, any doubts as to the appropriateness of class treatment must be

resolved in favor of certification, subject to later modification.  Richmond, 29

Cal.3d at 473-75.  Except in extraordinary circumstances not present here, the trial

court does not weigh the merits of the claims in ruling on a motion for class

certification.  Linder, supra ,23 Cal.4th at 443.  The seminal California Supreme

Court decision of Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th

319, 326 has reemphasized the procedural nature of the certification motion.

Here, class treatment is warranted for the class.  Evidence of the defendant's pay policies are uniform and proven by objective evidence.  The evidence consists of payroll records, pay stubs given to all hourly non-exempt AEI employees and time records.

### B.        The Proposed Class is Ascertainable and Numerous

For a class to exist, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class by reference to objective criteria.  The class definition is sufficiently specific to enable potential class members, and the court, to readily determine the parameters of the class.  (See, Clothesrigger, Inc. V. GTE Corp., (1987) 191 Cal.App.3d 605, 617.)

### C.        Common Issues of Law or Fact Predominate

There can be no dispute that common questions of law and fact predominate.  As an employer, State Farm is required to pay wages to all its employees in accordance with the Labor Code and IWC Wage Order 4-2001. (See, LC §§1173, 1178.5, 1182; Tidewater Marine Western, Inc. v. Bradshaw (1966) 14 Cal.4th 557, 561-562).  As indicated supra, the predominant legal and factual issues in this case are whether the defendant's pay policies are complaint with California law.  In assessing whether common issues predominate over individual issues, it is not necessary that the class members' claims or their circumstances be identical.  L.A. Fire & Police Protective League, supra, 23 Cal.App.3d at 74 (in an overtime action, the fact that there were 19 different subgroups of employees did not preclude finding that common issues predominated.)  California law specifically authorizes class actions when a defendant's corporate policies result in injury to a group of plaintiffs.  In Stephens v. Montgomery Ward & Co., Inc. (1987) 193 Cal.App.3d 411, 421, the court held that testimony from the class representative, coupled with proof of company-wide

15

policies and practices, was sufficient to prove that common issues affecting the class of employees as a whole predominated over individual issues.   See <u>Sav-On</u>, supra.

### D.   Plaintiff's Claims Are Typical of the Class Claims

Typicality simply means that the representatives' claims be similar to those of class members.  The interests of the class representative need not be identical to those of other class members; the class representative must simply be similarly situated.  <u>B.W.I. Custom Kitchen v. Owens-Illinois, Inc</u>. (1987) 191 Cal.App.3d 1341, 1347; <u>Classen v. Weller</u> (1983) 145 Cal.App.3d 27, 46. The named representative Bryan Shiosaka has claims that are typical of other similarly situated employees, thus is an adequate representative.

### E.   Adequacy of Representation

Adequacy of representation depends on whether the named class plaintiff and the plaintiff's attorneys qualify to conduct the proposed litigation and whether the named plaintiff's interests are antagonistic to those of the classes.  In this case, the representative plaintiff's injuries and damages are similar to those of the class she seeks to represent. Plaintiff has no claims that are antagonistic to the class. (**Antonelli Decl**. **¶16**)  Plaintiff's counsel is experienced and qualified.  (**Antonelli Decl**. **¶¶ 4-6 & 15**)

### X.   PROPOSED SCHEDULE OF SETTLEMENT PROCEEDINGS

The Parties propose the following schedule for the fairness hearing and final proceedings:

1. First Mailing of Notice, etc., to the Class (25 business-days from the date of Preliminary Approval), on: **August 6, 2013**;

2. Follow-up mailing to Class (when mail returned): 5 business days after

16

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

receipt of returned mail;

3.  Deadline to postmark Claim Forms/Objections and/or Opt-Out (45 calendar-days from the First Mailing of Notice, etc., to the Class), on: **September 20, 2013**;

4.  Fairness Hearing (no earlier than 30 calendar-days from the deadline to postmark Claim Forms/Objections and/or Opt-Out), on: **October 28, 2013**

## XI.   ACTION REQUESTED AS PART OF THE MOTION FOR PRELIMINARY APPROVAL

The Parties request this Court, as part of the preliminary approval process, to do the following:

1.  Review the proposed Settlement Agreement;

2.  Conditionally certify for settlement purposes only, a Class consisting of:  All current employees who worked for Defendant in

3.  California as an hourly non-exempt AEI from December 23, 2007 to May 31, 2013;

3.  Confirm Joseph Antonelli, Janelle Carney, Jason Hatcher, Michael Carras and Daniel Conforti as Class Counsel and Bryan Shiosaka as Class Representative;

4.  Approve an order preliminarily approving the proposed settlement on a class basis, direct notice to be given to the Class, and setting a hearing for final review of the proposed settlement on October 21, 2013.

5.  Approve Rust Consulting, Inc. as Claims Administrator to handle the notice and claims procedures as set forth in its proposal.

Memorandum of Points and Authorities in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

## **CONCLUSION**

Accordingly, Plaintiff respectfully requests that the settlement be given preliminary approval and notice be approved for mailing to the class.  A proposed order and a proposed notice will be filed prior to said hearing.

Dated: June 5, 2013

LAW OFFICE OF JOSEPH ANTONELLI
CONFORTI & CARRAS, APC

By: _____
Joseph Antonelli
Attorney for the Plaintiff

Memorandum of Points and Authorities in Support of Plaintiff's Motion for
Conditional Certification and Preliminary Approval of Class Action Settlement