Joseph Antonelli, Esq. (SBN 137039)
JAntonelli@antonellilaw.com
Janelle Carney, Esq. (SBN 201570)
JCarney@antonellilaw.com
Jason Hatcher, Esq. (SBN 285481)
JHatcher@antonellilaw.com
**LAW OFFICE OF JOSEPH ANTONELLI**
14758 Pipeline Ave, Suite E, 2nd Floor
Chino Hills, CA 91709
Tel.: (909) 393-0223 / Fax: (909) 393-0471

Daniel A. Conforti, Esq. (SBN 180080)
Dan@cocalaw.com
Michael J. Carras, Esq. (SBN 244331)
Mike@cocalaw.com
**CONFORTI & CARRAS, APC**
151 N. Kraemer Blvd., Suite 204
Placentia, CA 92870
Tel: (714) 577-1071/ Fax: (714) 577-0711

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| BRYAN SHIOSAKA, an individual, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, and DOES 1 through 50<br><br>Defendants | Case No.: CV 12 1268-CAS (CWx)<br><br>Honorable Christina A. Snyder<br><br>**CLASS ACTION**<br><br>**DECLARATION OF JOSEPH ANTONELLI IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       July 1, 2013<br>Time:      10:00 a.m.<br>Dept.:      5<br><br>Action Filed:  December 23, 2011 |

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional
Certification and Preliminary Approval of Class Action Settlement

I, Joseph Antonelli, declare:

1.      I am an attorney duly licensed to practice law before all courts in the State of California.  I am the senior partner at the Law Office of Joseph Antonelli and counsel of record herein and I have personal knowledge of the facts herein.  If called as a witness, I could and would competently testify herein.

## DECLARANT'S ROLE IN LITIGATION

2.      Herein, there are two (2) plaintiff law firms in the action, who have extensive experience in wage and hour class action litigation.

3.      Co-counsel, Michael J. Carras and Daniel A. Conforti of Conforti & Carras, APC initially met with Plaintiff, conducted investigation and research necessary to draft the complaint.  After Conforti & Carras drafted the initial complaint, my office has participated in the primary role or lead role, including drafting discovery.  Both offices worked cooperatively and amicably in an attempt to best represent the class without duplicating work.  As the primary contact with the plaintiff, my office, including my partner, Janelle Carney participated in several meetings with Mr. Shiosaka.

4.      I have been selected as a Southern California Super Lawyer and Sutton Who's Who in America Law. These recognitions are a selection by my peers based upon ethics, experience and reputation and represent the top 5% of our profession. I am also AV rated by Martindale-Hubbell, the highest possible rating for a lawyer.  I have litigated numerous successful wage and hour class actions in California.  Furthermore, my office in conjunction with the Law Offices of Kevin T. Barnes completed a court trial in the case of <u>Mutuc v. Huntington Memorial Hospital</u>, Case No. BC288727.  My firm has also been successful in obtaining favorable published opinions for employees in the state of California on 3 major issues in each of the following cases:

- 1 -

a.    <u>Huntington Memorial Hospital v. Superior Court ("Mutuc")</u> (2005) 131 Cal.App. 4th 893, 906;

b.    <u>Jaimez v. Daiohs USA, Inc.</u>, (2010)181 Cal.App.4th 1286; and

c.    <u>Tien v. Sup. Ct. (Tenet Healthcare)</u> (2006) 139 Cal. App. 4th 528.

5.    These cases were landmark decisions in the manner in which the regular rate must be calculated and what is considered a "subterfuge" to avoid the correct payment of regular rate and overtime rate (<u>Huntington Hospital</u>); the criteria required to certify pay stub claim, waiting time penalty claim, and meal and break claim among other matters (<u>Jaimez</u>); and protecting the interests of putative class members in a wage and hour case who want their identity protected (<u>Tien</u>).

## CLASS ACTION EXPERIENCE

6.    I have previously served as class counsel in a number of class action cases, including wage and hour matters.  The following is a sample of matters wherein I have been approved as class counsel:

## UNITED STATES DISTRICT COURT CASES

## <u>PROCARE ONE NURSES, LLC</u>

(1)    On or about November 21, 2011, Hon. Christina A. Snyder entered an Order Granting Final Approval of a Proposed Class Action Settlement and Judgment Thereon in <u>Nesbitt v. Procare One Nurses, LLC</u>, United States District Court Case No. 10-CV-09224-CAS-JEM.  Declarant and Mr. Barnes were approved as class counsel for settlement purposes;

## <u>WERNER ENTERPRISES, INC.</u>

(2)    On or about March 4, 2013, Hon. Margaret M. Morrow entered an Order and Judgment Granting Final Approval of Class Action Settlement, Attorney's Fees and Costs and Class Representative Enhancement in <u>Simona Montalvo v. Werner Enterprises, Inc.</u>, United States District Court Case No.

EDCV11-294MMM (OPx).  Declarant and Mr. Barnes were approved as class counsel for settlement purposes;

## LOS ANGELES COUNTY CASES

### HUNTINGTON MEMORIAL HOSPITAL

(3)      On or about January 21, 2004, the Los Angeles Superior Court Judge Thomas Willhite entered an order granting class certification in <u>Mutuc v. Huntington Memorial Hospital</u>, Los Angeles Superior Court Case No. BC288727.  The case involved an alleged illegal pay plan and a pay stub class.  Declarant and Mr. Barnes served as trial counsel in this matter, with trial testimony and argument concluding on April 6, 2007.  The matter was re-opened for closing argument on July 23, 2007.  As set forth above the same issue that is present in the case at bar was at issue in the <u>Mutuc</u> matter.  The <u>Mutuc</u> matter was tried in approximately 12 days, including partial days and opening and closing statements. Furthermore, there were a total 28 of witnesses who testified.  The case resulted in an approximate $32.8 million award for the class and ultimately settled with the related case of <u>Kiely v. Huntington Memorial Hospital</u> for $60 million;

(4)      On or about January 5, 2009, the Honorable William A. MacLaughlin entered an Order Granting Final Approval of Settlement, Class Representative Enhancements, Attorneys' Fees, and Costs in the matter of <u>Kiely v. Huntington Memorial Hospital,</u> Los Angeles Superior Court Case No. BC364972, which was settled together with related matter <u>Mutuc v. Huntington Memorial Hospital</u>, Los Angeles Superior Court Case No. BC288727.  Declarant and Mr. Barnes were approved as class counsel;

### METHODIST HOSPITAL OF SOUTHERN CALIFORNIA

(5)      On or about November 12, 2008, Hon. Victoria Chaney entered an Order Granting Final Approval of a Proposed Class Action Settlement in <u>Davis v.</u>

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

Methodist Hospital of Southern California, Los Angeles Superior Court Case No. BC380177. Declarant and Mr. Barnes were approved as class counsel for settlement purposes;

**PAGADUAN V. TENET HEALTHCARE**

(6)      Declarant and Mr. Barnes were approved as class counsel in the matter of Pagaduan v. Tenet Healthcare, JCCP No. 4377. On or about May 7, 2009, the Los Angeles County Superior Court granted final approval of a class action settlement. The court approved the settlement in the amount of $85,000,000.00;

**UNIVERSAL HEALTH SERVICES, INC. (UHS)**

(7)      Declarant and Mr. Barnes and Class Action Litigation Group were approved as class counsel in the matter of Lakso Hoellinger v. UHS, Los Angeles Superior Court Case No. BC342312. The Honorable Joanne O'Donnell entered an Order Granting Final Approval of Class Action Settlement on or about March 6, 2008;

**WHITE MEMORIAL MEDICAL CENTER**

(8)      Declarant and Mr. Barnes were Class Counsel in the matter of Chamber  v. White Memorial Medical Center, et al. and Flynn v. Glendale Adventist Medical Center, et al., Los Angeles Superior Court Case No. BC426335, in which the Honorable William F. Highberger was presiding and approved a final settlement in the amount of $8,750,000, attorneys' fee request of $2,916,966 and class representative enhancement awards of $40,000 to both class representatives;

**KAISER PERMANENTE HOSPITAL**

(9)      Declarant and Mr. Barnes were Class Counsel in the matter of Martin v. Kaiser Foundation Hospitals, et al., Case No. BC395992 in which the Honorable Jane L. Johnson was presiding and approved a final settlement in the

amount of $21,750,000, attorneys' fee request of $5,437,500 and class

representative enhancement awards of $90,000 to both class representatives;

## MIKE DIAMOND PLUMBING

(10)    Declarant and Mr. Barnes were Class Counsel in the matter of
Williams v. Mike Diamond Plumbing, Inc., et al., Los Angeles Superior Court
Case No. BC446885, in which the Honorable James R. Dunn was presiding and
approved a final settlement in the amount of $500,000, attorneys' fee request of
$139, 257, and class representative enhancement award of $50,000 to the class
representative;

## ROBERT HALF

(11)    On or about September 18, 2006, the Los Angeles Superior Court
Judge Edward R. Ferns entered an order granting class certification in Lafitte v.
Robert Half International, Inc., Los Angeles Superior Court Case No.: BC321317.
Declarant and Mr. Barnes were approved as class counsel.  This case involved a
mis-classification concerning exempt employees;

## FIRST CHOICE

(12)    Declarant and Mr. Barnes were approved as class counsel in the
certified matter of Jaimez v. DAIOHS, U.S.A., Inc, (First Choice), Los Angeles
Superior Court Case No. BC372665.  This case involved mis-classification of
employees, meal period and rest period violations, pay stub, and waiting time
penalty classes. On January 4, 2011 Judge Ralph W. Dau entered an order
certifying the classes.  On October 20, 2011 final approval was granted in the total
amount of $1.7 million.

## CINTAS

(13)    Declarant, Mr. Barnes, and others were approved as class counsel
in the matter of Barajas v. Cintas, Los Angeles County Superior Court Case No.

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional
Certification and Preliminary Approval of Class Action Settlement

BC261276.  Judge Charles W. McCoy entered an order approving class certification and settlement.  This case involved a misclassification concerning exempt employees;

**LOWES**

(14)    On or about April 16, 2008, the Los Angeles County Superior Court granted final approval of a class action settlement in the matter of <u>Hall v. Lowes HIW</u>, Case No. BC325832.  The court approved the settlement in the amount of $23,000,000.00.  The two (2) lead class representatives received $25,000 each as individual awards;

ORANGE COUNTY CASES

**CHOC**

(15)    Declarant, and other counsel were approved by the Orange County Superior Court by Judge David Velasquez, as Class Counsel in the matter of <u>Pate, et. al. v. Children's Hospital of Orange County (CHOC)</u>, Case No. 05CC00303 and a related case of <u>York v. CHOC</u>, Case No.30-2011-00465444CU-OE-CX.  On March 8, 2010 the Court granted class certification in <u>Pate</u>, and on March 23, 2012 final approval was granted in both matters, totaling in the amount of $17.5 million;

**ST. JOSEPH HOSPITAL OF ORANGE (SJHO)**

(16)    On or about June 24, 2009, the Honorable Nancy Wieben Stock entered an Order Partially Granting and Partially Denying Plaintiffs' Motion for Class Certification in the matter of <u>Oberschlake v. St. Joseph Hospital of Orange</u>, Orange County Superior Court Case No. 05CC00301.  On or about May 20, 2011, the Honorable Nancy Wieben stock further entered Orders Granting Preliminary and Final Approval of Class Action Settlement.  Judge Stock did award attorneys' fees of $4,000,000 or 33.33% of the gross settlement value of $12,000,000;

/////

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

**HOAG**

(17)    On or about June 14, 2012, Honorable Gail Andler entered an Order Granting Final Approval of Class Action Settlement in <u>Coronav. Hoag Memorial Hospital Presbyterian,</u> Orange County Superior Court Case No 30-2009-00295587.  Declarant and Mr. Barnes were approved as class counsel for settlement purposes. Judge Andler did award the settlement value of $4 million;

**RUBIO'S**

(18)    On or about December 2, 2005, the Honorable Kim J. Dunning entered an Order granting class certification in <u>Bates v. Rubio's Restaurants, Inc.,</u> Orange County Case No.: 01CC00231.  Declarant, Mr. Barnes, and others were approved as class counsel.  The case involved misclassification of defendant's salaried exempt employees titled "General Managers and Assistant Managers," for meal violations, rest violations, and pay stub violations. The court before the Honorable Thierry P. Colaw on June 28, 2007 granted Final Approval of $7,500,000.00. Judge Colaw approved an award of attorneys' fees in the amount of $2,225,000.00. The court awarded the class representatives an enhancement of $20,000.00 each;

**STAPLES**

(19)    On or about November 10, 2005, the Honorable Ronald L. Bauer granted class certification in <u>Staples Overtime Cases</u>, JCCP No. 4235.  Declarant and Mr. Barnes, as well as others, were approved as class counsel.  The case involved misclassification of defendant's salaried exempt "manager" employees;

**OTHER COUNTIES**

**BRIDGEPONT**

(20)    On or about August 24, 2012, Honorable Jeffrey B. Barton entered an Order Granting Final Approval of Class Action Settlement in <u>Sanchez v.</u>

- 7 -

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

Bridgepoint Education, Inc., San Diego Superior Court Lead Case No. 37-2011-00086135-CU-OE-CTL. Declarant and Mr. Barnes were approved as class counsel for settlement purposes. Judge Barton did award the settlement value of $9.9 million;

**PARTY CITY**

(21)    On or about April 6, 2009, the San Diego Superior Court entered an Order Granting Plaintiff's Motion for Class Certification in the matter of Grassi v. Party City Corporation, San Diego Superior Court Case No. GIC874341. Declarant and Mr. Barnes were appointed class counsel in this matter. The San Diego Superior Court entered a Final Approval order on October 15, 2010, approving a class wide settlement in the amount of $1,495,000.00 million;

**K-MART**

(22)    On or about December 19, 2007, the San Diego Superior Court entered an Order Granting Final Approval of Class Action Settlement in the matters of Clarkson v. K-Mart Holding Corporation, Case No. GIC840442 and Wallace v. K-Mart Corporation, United States

Bankruptcy Court, Northern District of Illinois - Eastern Division, Case No. 02-02474, in the amount of $7,900,000.00. The court awarded the class representatives an enhancement of $25,000.00 each;

**JIFFY LUBE**

(23)    On or about May 2, 2007 the Santa Clara Superior Court by the Honorable Jack Komar entered an Order granting final approval in the matter of Jiffy Lube Overtime Cases, Santa Clara Case No. 103CV817723. Declarant and Mr. Barnes were appointed class counsel on this matter. The case involved mis-classification of defendant's salaried exempt employees titled "General Managers," meal violations, rest violations, and pay stub violations. The court approved the

- 8 -

settlement in the amount of $6,000,000.00. Each of the four class representatives was awarded an individual award of $20,000; and

**HEALD COLLEGE**

(24)    On or about May 4, 2004, the Santa Clara Superior Court the Honorable Jack Komar entered an Order granting final approval in the matter of Carney v. Heald College (Santa Clara Case No. CV807318)  Declarant and Mr. Barnes were appointed class counsel on this matter.

**INVESTIGATION AND LITIGATION**

7.    The class size is approximately 400 employees based on defendant's data provided in conjunction with mediation and based on discovery and plaintiff's investigation.  The total number of Automotive Estimatics Inspector ("AEI") employees is 377 and is expected to be less than 400.  The classes listed in the First Amended Complaint ("FAC") are amenable to class certification.  The plaintiff has alleged commonality with common questions of law and facts; the plaintiff has typical claims as to the entirety of the class members; the plaintiff has no claims that are antagonistic to the class members; the plaintiff and class counsel are adequate representative and counsel, respectively; and the class action mechanism is a superior mechanism to resolve the claims of the approximate 400 AEI class members.

8.    Plaintiff and defendant entered into a Stipulation permitting the plaintiff to file his First Amended Complaint.  The court entered the Order on May 2, 2013 permitting plaintiff to file a First Amended Complaint to add a causes of action for LC §203 penalties, LC §226, and LC §2699 claims, as well as unpaid wages under the Federal Labor Standards Act ("FLSA").  The FAC has been filed on May 2, 2013.  These additional theories were discovered post filing of the complaint in counsel's investigation, including review of documents.

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

9.      While the details of the recovery for each Class Member are set forth in the proposed Settlement Agreement filed concurrently herewith and attached hereto as **Exhibit 1**, the settlement for each participating Class Member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk relative to class certification, and the costs of litigation.

10.     Pursuant to <u>Kullar v. Footlocker Retail Inc</u>., 168 Cal. App 4th 116, 118 and <u>Dunk v. Ford Motor Co</u>., (1996) 48 Cal.App.4th 1794, the following describes the settlement's reasonableness.

A.      Strength of Plaintiff's case, the plaintiff and class counsel believed that he would achieve class certification as to the failure to pay wages in this case, and were confident that plaintiff and the class would ultimately prevail on the issue.  The primary theory of the case was that Defendant's uniform policies require AEIs to work unpaid straight time and overtime hours before their first inspection and after their last inspection of the day. In addition, Plaintiff is amending to add a <u>Labor Code</u> §226 (pay stub claim).  In review of the records, the plaintiff discovered the liability on this theory rests on the fact that the paystubs provided by Defendant to all hourly AEI employees are inaccurate as to the total hours worked and the rate paid for overtime premium.  The paystub claim is derivative and also has an independent violation.  The derivative aspect of the claim is that all hours reported on the paystub are inaccurate as the off the clock hours worked are not included on the paystubs.

Plaintiff claims that there are two (2) independent aspects of the paystub claim.  First, there is an overstating of hours worked on all paystubs in which Paid Sick Leave (PSL) has been paid to the employees.  Second, there is an understating of the overtime rate as to all paystubs in which the class members were paid any overtime premium.  The Defendant does not believe that the pay stubs violated any

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

respect of California <u>Labor Code</u> §226.  The rate reported for the overtime pay is under stated and therefore inaccurate.

Based on the data produced by the Defendant both through formal discovery and informally as a part of the agreement to attend mediation, the parties have agreed to allocate the settlement proceeds based on a proportion of each class members earnings are to the settlement fund.  The bulk of the liability and damages is from December 23, 2007 to December 24, 2011.   Accordingly, the parties have agreed to weigh the earnings of the class such that class member earnings between December 23, 2007 to December 24, 2011 are worth 98% and the earnings from December 25, 2011 to May 31, 2013 are worth 2%.  This apportionment will ensure an equitable distribution amongst all class members. The Plaintiff contends that on December 24, 2011, the Defendant changed its policy to ensure that the AEI employees were being paid all time worked.

The defendant had some viable defense theories on merits.  First, the Defendant had a policy of paying for all hours worked and did discipline employees for off the clock work.  Second, there are multiple teams of 9 to 14 AEI employees per team assigned to multiple geographic areas.  AEIs are assigned to work at multiple locations, including (a) third party auto body shops; (b) vehicle inspection sites (VIS), such as salvage yards or collision centers; or (c) home. Accordingly, evidence was produced showing that various managers were carrying out and/or interpreting policies differently.  State Farm policies did prohibit off the clock work and did require AEIs to accurately account for all hours worked.

Since the plaintiff retained an expert and performed extensive review of the time records, pay records, and procedure documents, and calculated damage estimates, the parties were able to reach a compromise figure.  Without violating the mediation privilege, the defendant vehemently argued that it would defeat class

- 11 -

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

certification.  The defendant had conducted various studies and obtained interviews from the putative class that led it to believe if the case were certified it could defense the case.  As to the paystub claim defendant did not believe there was any probability of the class to prove "injury" and that the pay stubs were legally compliant.  As to the waiting time penalty claim, the defendant had a "good faith" defense that may have eliminated liability and damages.  As to the "off the clock" claim, the defendant felt it had a good defense as set forth above.

In any event the maximum exposure on the off the clock wages claim with interest is approximately $6,290,000.00.  This is based on .25 hours of straight time wages off the clock and .55 hours of overtime per week.

The class valued the daily off the clock wages claim to be the strongest claim and felt confident that it would recover on this claim.  Based on Class counsels' high confidence level in this claim the $5,000,000.00 settlement represents recovery of 79% of the full value.

The waiting time penalty maximum exposure was approximately $400,000.00.  The class discounted this based on risk and the fact that waiting time penalties are not awarded if a good faith dispute exists as the class would not have been able to prove "willful" withholding of wages.  Furthermore, this was a purely derivative claim.  A reasonable evaluation of this claim would be $20,000.00 or 5% of exposure.

As to the paystub penalty, this was a maximum exposure of approximately $907,000.00, assuming each paystub provided to each class member each pay period was in violation of Labor Code §226. There was a dispute as to whether the class was required to and could actually prove injury as a result of paystub deficiencies.  The risk of not getting certification was high as a result of defendant's claim of no injury.  The class had a high confidence level on recovery.

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

Accordingly, the full exposure at trial per the Class expert for the class members would have been approximately $7,217,000.00.  Thus, the settlement of $5,000,000.00 represents almost 69% of reasonable value of the case which is fair and reasonable.  However, the settlement represents 79% the value of the main wage claim without discount and with interest.

B.      The risk, expense, complexity and likely duration of further litigation:  Continued litigation would have been costly with uncertain recovery given the current status of the off the clock claims and myriad of individual issues. While plaintiff strongly believed in his case, individual issues could have been a factor in determining damages and possible decertification, which would have resulted in the class receiving nothing.  Further, the class size is relatively small with 377 class members.  The defendant could have attempted to settle individual claims and left the class with nothing.

C.      The risk of maintaining class action status through trial: Plaintiff was confident in his ability to achieve and maintain class certification status.  Therefore, uncertainty as to individual issues could have prevented the matter going forward as a class action through to trial.

D.      With respect to the amount of the settlement, the number of "cents on the dollar" or percentage of total damages the settlement represents, a fair and reasonable settlement amount.  The plaintiff's expert analysis is listed above and the settlement represents approximately 80% of the plaintiff's best case total exposure of the case with all claims.  In reality the claims that plaintiff would have gone to trial the settlement is 80% the full value of those claims.  However, the plaintiff discounted for reasonable factors, including the fact that most courts do not award pay stub penalties for derivative claims nor do the courts award the full waiting time penalties, when good faith defenses exist.

- 13 -

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional
Certification and Preliminary Approval of Class Action Settlement

Overall under the <u>Dunk</u> and <u>Kullar</u> factors, the amount of the settlement given the risks of potentially being subject to decertification and ultimately liability given the current uncertainty in the law demonstrates that the settlement is fair and reasonable.

11.     The settlement class is composed of: "All current employees who worked for Defendant in California as an hourly non-exempt AEI from December 23, 2007 to May 31, 2013."

12.     The settlement amount is fair and reasonable based on a review of all objective evidence. The party's assessment of the matter is based on extensive research before and during the litigation, and written discovery. The settlement was further reached after consultation with a damage expert regarding potential damage exposure.

13.     This settlement, subject to the Court's approval, is the product of tremendous effort, and a great deal of expense by the parties and their counsel. The settlement was reached after litigation, discovery, and after an exchange of data to compute damages, numerous conversations, exchanges of correspondence, discovery, and one (1) day of mediation. The mediator, Barry Winograd was able to help the parties to settle at the April 10, 2013 mediation.

14.     Plaintiff submits that the settlement for each participating Class Member is fair, reasonable, and adequate given the inherent risk of litigation, the risk of class certification and costs of litigation. With approximately 377 class members the settlement would result in a net settlement fund of approximately $3,263,750.00 thus averaging out to approximately $8,657.00 per class member. The plaintiff will supplement this declaration closer to the hearing date once actual numbers will be provided based on the gross earnings of class members.

15.     Herein, there are two (2) Plaintiff's law firms in the action, who have

- 14 -

extensive experience in wage and hour class action litigation as hereinbefore stated.  Class Counsel are experienced and qualified to evaluate the class claims and viability of the defenses.  The recovery for each of the Class Members is on very generous terms on account of the close proximity of the Class Members' recovery to what they would have received had they been properly paid employees from the onset.  This settlement is fair, adequate and reasonable and in the best interests of the Class.

## CLASS REPRESENTATIVE INDIVIDUAL AWARD

16.     I believe that the class representative individual award of $20,000.00 for Mr. Shiosaka is fair and reasonable.  The enhancement is broken down as $10,000 for an enhancement and the $10,000 as consideration for the general release provided by plaintiff.  I believe that the general release was worth a minimum of $20,000 as plaintiff had a legitimate constructive discharge claim based on retaliation.  I believe the $10,000 is a fair and reasonable enhancement as well.  Plaintiff was very instrumental in providing information.  The Class Representative signed a retainer agreement and Duties of Class Representative documents indicating that he understood the risks and obligations of acting as Class Representatives.  The Class Representative was instrumental in getting the settlement figure for the benefit of the class.  There are few individuals that are willing to act as a Class Representatives in these types of actions against a current or former employs.  There is no doubt that without the Class Representative's hard work, diligence, and willingness to assume a large financial risk, there would have been no recovery in this case.  The plaintiff sacrificed his own lawsuit in order to benefit all class members.  Assuming he were to have recovered on his individual claims, his recovery would have been significantly greater.  There was ample risk to the Class Representative in filing the lawsuit as employers often retaliate or

- 15 -

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

make it very difficult for a person to obtain employment.  The Class Representative will submit a detailed declaration at the time of the final approval hearing of his efforts in this case, his time, and the risks he endured in filing this action. Furthermore, Mr. Shiosaka had no conflicts of interest or was antagonistic to the class claims that would prevent him from fairly and adequately protecting class interests through trial.

17.     Fairness of the Settlement is apparent from risks of trial on the merits. There is a reluctance of current employees to vindicate their rights in actions against "the hand that feeds them."  Their only practical chance at relief is through a class action. Mr. Shiosaka is a long term employee and has endured hardship as a result of filing a class action.

18.     Plaintiff is requesting attorneys' fees in the reasonable sum of 30% of the fund, $5,000,000.00 for a total fee of $1,500,000.00.  Class counsel has been approved at the hourly rates of $800 for myself and $600 for Janelle Carney and Declarant requests that Jason Hatcher be approved at $250.00 per hour.  At the time of the final approval, the plaintiff will provide the court with a detailed declaration describing work performed at the time of the final approval hearing, in addition to their collective costs.  At the present time it is estimated that Class Counsel have combined costs of approximately $15,000.00.

19.     A true and correct copy of Rust Consulting, Inc.'s estimate dated April 12, 2013 to administer this settlement is attached hereto and marked as **Exhibit 2.**  Said costs should not exceed $25,000.00.

/////

/////

/////

/////

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 5th day of June, 2013 at Chino Hills, California.

_____

Joseph Antonelli, Declarant

Declaration of Joseph Antonelli in Support of Plaintiff's Motion for Conditional Certification and Preliminary Approval of Class Action Settlement

# Exhibit 1

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(WESTERN DIVISION – LOS ANGELES)

| | |
|---|---|
| 11 BRYAN SHIOSAKA, an individual, and on behalf of all others similarly situated, | ) Case No.: CV 12 1268-CAS (CWx) |
| 12 | ) Honorable Christina A. Snyder |
| 13                Plaintiff, | ) **CLASS ACTION** |
| 14      v. | ) **STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS** |
| 15 STATE FARM MUTUAL AUTOMOBILE INSURANCE | ) |
| 16 COMPANY, an Illinois Corporation, and DOES 1 through 50 | ) Action Filed:  December 23, 2011 |
| 17 | ) |
| 18           Defendants | ) |
| 19 | ) |
| 20 | ) |
| 21 | ) |
| 22 | ) |

23
24
25
26
27
28

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

1.     Subject to final approval by the Court, which counsel and parties agree to pursue and recommend in good faith, Plaintiff BRYAN SHIOSAKA, individually and on behalf of all employees similarly situated, on the one hand ("Named Plaintiff"), and Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, on the other hand ("Defendant"), on the other (collectively "the Parties") hereby agree to the following binding settlement of the class action <u>Bryan Shiosaka v. State Farm Mutual Automobile Insurance Company</u>, United States District Court – Central District of California, Case No. **CV** 12 1268-CAS (CWx).

## <u>DEFINED TERMS</u>

As used herein, the following terms are defined as:

2.     "Action" means <u>Bryan Shiosaka v. State Farm Mutual Automobile Insurance Company</u>, United States District Court – Central District of California, Case No. CV 12 1268-CAS (CWx).

3.     "Agreement," "Settlement," or "Stipulation" means this Stipulation and Settlement Agreement of Class Action Claims.

4.     "Attorneys' Fees and Cost Award" means the amount authorized by the Court to be paid to Class Counsel for the services they have rendered and expenses they have incurred in prosecuting the Action.  Class Counsel shall request, and Defendant will not oppose, an award of Attorneys' Fees of up to One Million Five Hundred Thousand dollars ($1,500,000.00) or Thirty percent (30%) of the Total Maximum Settlement Fund of Five Million Dollars ($5,000,000.00), and a Cost Award of up to Fifteen Thousand Dollars ($15,000.00).  The Attorneys' Fees and Cost Award shall be paid from the Gross Settlement Payment.  Class Counsel will be issued IRS Form 1099 for the Attorneys' Fees and Cost Award.

5.     "Claims" means all claims which were or could have been asserted for Defendant's failure to pay overtime, regular, and minimum wages (including any

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

and all claims for alleged failure to pay overtime, compensate Class Members for all hours worked, or properly calculate the regular rate); failure to promptly pay all wages due and owing at the time of an employee's termination or discharge; failure to issue properly itemized wage statements;  all related claims for Unfair Competition or Business Practices under California's Business and Professions Code or similar laws; all claims for violations of Labor Code section 224;  all claims for any and all penalties pursuant to the Private Attorneys General Act of 2004, Labor Code §2698, et seq., arising out of the aforementioned claims, or any other claims arising from, or which could have arisen from, the facts alleged in the Action.

6.     "Claims Administrator" means Rust Consulting, Inc., 625 Marquette Avenue, Suite 880, Minneapolis, MN 54402-2469; Telephone: (612) 359-2000; Facsimile: (612) 359-7488.

7.     "Claims Administration Costs" means the amount that will be paid to the Claims Administration and includes all costs incurred in administering the Settlement, which will be paid from the Gross Settlement Payment, as defined in paragraph 23, *infra*.

8.     "Claims/Objection/Exclusion Deadline Date" means the date, no later than forty-five (45) calendar days after the date the Claim Form is mailed, respectively, (judged by the postmark date) by the Claims Administrator, on or before which the written objection or request for exclusion must be validly completed, signed and returned by mail (judged by the postmark date) for a Class Member to be eligible to receive an Individual Settlement Payment.

9.     "Class" and "Class Members" mean and refer to a member of the class conditionally certified for settlement purposes by the United States District Court – Central District of California, during the applicable Class Period, consisting of all current and former employees who worked for Defendant in

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

California as an Automotive Estimatics Inspector ("AEI") from December 23, 2007 to the date of Preliminary Approval Order entered who submit a valid and timely claim form.  However, the end date of the class period shall not be later than May 31, 2013.

10.    "Class Counsel" and "Plaintiff's Counsel" mean and refer to Joseph Antonelli, Esq. of the Law Office of Joseph Antonelli and Michael J. Carras of Conforti & Carras, APC.

11.    "Class List and Data Report" means a list of current and former AEIs that Defendant will diligently and in good faith complete from its Human Resources employee information database and provide to the Claims Administrator and Law Office of Joseph Antonelli within ten (10) business days of Preliminary Approval of the Settlement.  The Class List and Data Report shall be in a computer-readable format, and shall include each Class Member's name, last known mailing address, and telephone number, to the extent available in the Human Resources employee information database.  The list will also include each AEI Employee's Individual Gross Wages, as defined *infra*, during the applicable Class Period.  The Class List and Data Report shall be provided in a computer-readable format.  The Law Office of Joseph Antonelli agrees (i) to maintain the confidentiality of the Class List and Data Report and its contents, (ii) not to share the Class List and Data Report or its contents with any entity or individual outside of the Law Office of Joseph Antonelli, and (iii) only to use the Class List and Data Report or its contents for purposes of effectuating the settlement.

12.    "Class Period" means the period from December 23, 2007 through the date of Preliminary Approval, in no event later than May 31, 2013.

13.    "Court" means the United States District Court – Central District of California.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

14.     "Defendant" or "State Farm" means State Farm Mutual Automobile Insurance Company.

15.     "Defendants' Counsel" means of Douglas R. Hart, Sheryl K. Horwitz, and Erica C. Parks of SIDLEY AUSTIN, LLP.

16.     "Effective Date" means the later of: (a) the date on which the time for appeals by Class Members who validly submitted a Notice of Objection, from any Order ruling on any objections or granting Final Approval of the Settlement has run; (b) the resolution of any appeal, filed by a Class Member who validly submitted a Notice of Objection, from any Order ruling on any objections for granting Final Approval of the Settlement; or (c) the Final Approval Date.

17.     "Final Approval" means the Court's order granting final approval of the Settlement.

18.     "Final Approval Date" means the date on which Defendant's Counsel receives the Court's Final Approval order.

19.     "Final Approval Hearing/Settlement Fairness Hearing" means the hearing at which the Court considers whether to approve the Settlement and to enter the Final Judgment.

20.     "Final Judgment" means the Court's Final Judgment in a form to be agreed upon by the Parties prior to the hearing on the Motion for Preliminary Approval.

21.     "General Release" means The Plaintiff, in his individual capacity and with respect to his individual claims only, agrees to release the Defendant from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any collective bargaining agreement, and/or any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Defendant committed or omitted prior to the execution hereof including a waiver of <u>Civil Code</u> §1542.  Said Section reads as follows:

> **Section 1542.  [General Release – Claims Extinguished.]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.**

22.    "Gross Individual Settlement Payment" means the settlement amount for each individual Class Member resulting from the calculations set forth in Section I, paragraph 12, infra.

23.    "Gross Settlement Payment" is synonymous with "Total Maximum Settlement Fund" and means the total amount that State Farm will be required by this Stipulation to pay to the Class Members, Named Plaintiff, Class Counsel, the Labor and Workforce Development Agency and the Claims Administrator.  The Gross Settlement Payment shall not exceed the Total Maximum Settlement Fund.  The Total Maximum Settlement Fund is the total amount that shall be paid by State Farm including employer taxes, including the employer FICA, FUTA, and SDI contributions.  The Total Maximum Settlement Fund is Five Million Dollars ($5,000,000).

24.    "Named Plaintiff" means Bryan Shiosaka.

25.    "Net Individual Settlement Payment" means the amount paid to each AEI class member who is a Participating Settlement Class Member's Gross Individual Settlement Payment less employee portions of state and federal withholding taxes, including the employee portion of FICA, FUTA and SDI contributions and any other applicable payroll deductions required by law as a result of the payment of the amount allocated to such Participating Settlement

5

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Class Members under the terms of this Stipulation. Employer taxes, including the employer FICA, FUTA, and SDI contributions, shall be paid by State Farm from the Total Maximum Settlement Fund.

26.     "Net Settlement Amount" or "NSA" refers to the funds that will be distributed to AEI employees ("Net Individual Settlement Payment") who are Participating Settlement Class Members under this Stipulation after payment of any Attorneys' Fees and Cost Awards, Service Awards, Claims Administration Costs, and after Seventy Five Percent (75%) of the Fifteen Thousand Dollars ($15,000.00) PAGA payment is paid to the California Labor Workforce Development Agency ("LWDA"), which equates to Eleven Thousand Two Hundred and Fifty Dollars ($11,250.00).  The Parties further agree, covenant, and represent that State Farm shall be required to pay only the Gross Settlement Amount of Five Million Dollars ($5,000,000.00).

27.     "Notice" means the Notice of Pendency and Settlement of Class Action: Settlement Hearing; and Claim, Consent, and Exclusion Procedures that the Court directs to be sent via regular mail to all Class Members (substantially in the form annexed hereto as **Exhibit 1**).

28.     "Notice Packet" means the packet that will be sent via regular mail to all Class Members and shall include the Notice, including objection, exclusion, and Claim Form procedures.

29.     "Notice Response Deadline" means the date forty-five (45) calendar days after all Notice Packets are mailed to Class Members by the Claims Administrator, and is synonymous with Claims/Objection/Exclusion Deadline Date, as defined in paragraph 8, *supra*.

30.     "PAGA Payment" means Fifteen Thousand Dollars ($15,000) of the Gross Settlement Amount constituting penalties pursuant to California's Private Attorneys General Act of 2004 (California Labor Code § 2699 *et seq*., or

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

"PAGA"), Seventy Five Percent (75%) of which Eleven Thousand Two Hundred and Fifty Dollars ($11,250.000) will be paid to the California LWDA pursuant to California Labor Code §2699(i).

31.   "Participating Settlement Class Member" means a Class Member who has returned a valid and timely Claim Form to receive his/her share of the Net Settlement Amount, or who is otherwise deemed to be a Participating Settlement Class Member pursuant to the terms and procedures set forth in this Agreement. The Parties further agree, covenant, and represent that this is a "claims made" settlement and only those Class Members who submit a timely and properly completed Claim Form in the manner described herein shall receive his/her share of the Net Settlement Amount.

32.   "Parties" means Defendant, the Named Plaintiff, and the Class Members.

33.   "Preliminary Approval Order" means the Order issued by the Court preliminarily approving the terms of the Settlement set forth in this Stipulation, in a form to be agreed upon by the Parties prior to the hearing on the Motion for Preliminary Approval.

34.   "Qualified Settlement Fund" shall be the fund established by the Claims Administrator pursuant to Internal Revenue Code Section 1.468B-1, after the Hearing on Preliminary Approval, into which the Total Maximum Settlement Fund shall be deposited within ten (10) business days following the Effective Date.

35.   "Released Claims" is defined as follows:  The Class Members shall fully and finally release and discharge the Defendant of all applicable California wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising from or related to the claims litigated in the Action, and arising prior to the date of Preliminary Approval of this settlement, including without limitation statutory, constitutional, contractual

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or other relief under <u>California Business & Professions Code</u> § 17200, et seq., based on the following categories of allegations:  (a) all claims for unpaid overtime, regular, and minimum wages (including any and all claims for alleged failure to pay overtime, compensate Class Members for all hours worked, or properly calculate the regular rate); (b) all claims for the failure to promptly pay all wages due and owing at the time of an employee's termination or discharge; (c) all claims for the failure to issue properly itemized wage statements; (d) all related claims for Unfair Competition or Business Practices under California's Business and Professions Code or similar laws; (e) all claims for violations of Labor Code section 224; (f) all claims for any and all penalties pursuant to the Private Attorneys General Act of 2004 arising out of the aforementioned claims; and (g) all other claims that were or could have been asserted based on the facts alleged in the Action. Additionally, any Class Member who submits a Claim Form (and, in so doing, becomes a Participating Settlement Class Member) will be deemed to have opted into the action for purposes of the Fair Labor Standards Act and, as to those Participating Settlement Class Members, the Released Claims include any claims such Participating Settlement Class Members may have under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.  Only those Settlement Class Members who submit valid claim forms will be deemed to have opted into the action for purposes of the Fair Labor Standards Act and thereby released and waived any of their claims under the Fair Labor Standards Act.

The Released Claims include any claims as discussed herein that the Class Members do not know or suspect to exist in their favor at the time of the release that do arise, or could have arisen, out of the claims alleged in the Action, which, if known by them, might have affected their settlement with, and release of, the

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Released Parties or might have affected their decision not to object to this Settlement.  With respect to the Released Claims, Class Members expressly waive all rights under Section 1542 of the California Civil Code.  Said Section reads as follows:

> **Section 1542.  [General Release – Claims Extinguished.]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.**

36.    The Named Plaintiff Released Claims include any claims as discussed herein that the Named Plaintiff does not know or suspect to exist in his favor at the time of the release that do arise, or could have arisen, out of the claims alleged in the Action, which, if known by him, might have affected his settlement with, and release of, the Released Parties or might have affected his decision not to object to this Settlement.  With respect to the Released Claims, Named Plaintiff expressly waives all rights under Section 1542 of the California Civil Code.  Said Section reads as follows:

> **Section 1542.  [General Release – Claims Extinguished.]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.**

37.    "Released Parties" means Defendant State Farm Mutual Automobile Insurance Company and its past, present, or future parents, subsidiaries and affiliated corporations, and their past, present, or future officers, directors, employees, partners, members, shareholders and agents, staffing agencies, joint employers, and any other successors, assigns or legal representatives.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

38.     "Service Award" means the amount that the Court authorizes to be paid to the Named Plaintiff over and above his Individual Settlement Payment, in recognition of his efforts in assisting with the prosecution of the Action on behalf of the Class Members and in return for executing a General Release of all Claims against Defendant.  Named Plaintiff will request a Service Award up to Twenty Thousand Dollars ($20,000.00).  State Farm does not oppose any request for a Service Award.  Named Plaintiff will be issued an IRS Form 1099 in connection with his Service Awards.

39.     "Total Maximum Settlement Fund" is synonymous with the Gross Settlement Payment and means the total amount that State Farm may be required by this Stipulation to pay to Participating Settlement Class Members, Named Plaintiff, Plaintiff's Counsel, the Labor and Workforce Development Agency and any settlement administrator pursuant to the terms of this Stipulation.  The Total Maximum Settlement Fund is Five Million Dollars ($5,000,000.00) including employer share of taxes as set forth above.

## I.  RECITALS

This Stipulation is made by the Named Plaintiff on behalf of himself and each of the other Class Members, on the one hand, and the Defendant, on the other hand, in this Action, and is subject to the approval of the Superior Court.

## A.     CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

At or about the time that the Named Plaintiff files his motion for preliminary approval of this Settlement Agreement, the Named Plaintiff shall request certification of the class as hereinbefore defined in paragraph 9 for settlement purposes only.

Limitation on Effect of Certification.  The certification of the Class – for settlement purposes only – shall not constitute, in this or any other proceeding, an

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

admission of any kind by State Farm, including without limitation, that certification of a class for trial purposes is appropriate or proper or that Named Plaintiff could establish any of the requisite elements for class treatment of any of the claims in the Action.  In the event that the Settlement is not finally approved, or the Settlement is otherwise terminated or rendered null and void, the certification of the Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this Action or in any other actions are satisfied.  In such circumstances, State Farm expressly reserves all rights to challenge the Class certification for any purpose other than settlement purposes in this Action or in any other action on all available grounds as if no class had been certified for settlement purposes in the Action, and no reference to the prior certification of this class, or any documents related thereto, shall be made for any purpose.  Additionally, the Parties stipulate that to further the certification, and for no other purpose or effect, the Named Plaintiff is typical of other non-exempt AEI hourly employees and can represent this class.

**B.** **INVESTIGATION IN THE CLASS ACTION**

The Parties have conducted significant investigation of the facts and law during the prosecution of this Action.  Discovery and investigation included: the propounding of written discovery by both sides; the production of documents by Named Plaintiff, the production of data relevant to the Class Members' claims.  Further, the Plaintiff noticed the depositions of State Farm's Person(s) Most Qualified on twenty-nine (29) topics, Ken Forrest, Estimatics Team Manager, and John A. Hubert Estimatics Section Manager.  The Defendant served a Request for Production of Documents, Set One on Plaintiff.  Plaintiff served Special Interrogatories, Set One and Request for Production of Documents, Set One, which included seventeen (17) requests.   Furthermore, there have been numerous

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

conferences between representatives of the Parties and one (1) full day-long mediation with Barry Winograd, Esq. on April 10, 2013. The Plaintiff retained a damage expert to analyze Defendant's payroll documents and perform a damage analysis. Mr. Winograd is an experienced mediator of wage-and-hour class actions. Counsel for the Parties have investigated the law as applied to the facts discovered regarding the alleged claims of the Class Members and potential defenses thereto, and the damages claimed by Class Members.

### C.  BENEFITS OF SETTLEMENT TO CLASS MEMBERS

Named Plaintiff and Plaintiff's Counsel recognize the expense and length of continued proceedings necessary to litigate their disputes through trial and through any possible appeals. Named Plaintiff has also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Named Plaintiff and Plaintiff's Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to State Farm's defenses thereto (many of which have been shared at the mediation and in settlement discussions). Named Plaintiff and Plaintiff's Counsel have also taken into account the extensive settlement negotiations conducted. Named Plaintiff and Plaintiff's Counsel have also taken into account State Farm's agreement to enter into a settlement that confers substantial relief upon the Class Members. Based on the foregoing, Named Plaintiff and Plaintiff's Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate and a reasonable settlement, and is in the best interests of the Class.

### D.  STATE FARM REASONS FOR SETTLEMENT

State Farm has concluded that any further defense of this litigation would be protracted and expensive for all Parties. Substantial amounts of time, energy and resources of State Farm have been and, unless this Settlement is made, will

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

continue to be devoted to the defense of the Claims asserted by the Classes.  State Farm has also taken into account the risks of further litigation in reaching its decision to enter into this Settlement.  State Farm has, therefore, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the Claims as set forth in the Action.

### E.   <u>STATE FARM DENIALS OF WRONGDOING</u>

State Farm has denied and continues to deny each of the Claims and contentions alleged in the Actions.  State Farm has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action.  State Farm also has denied and continues to deny, *inter alia*, the allegations that the Named Plaintiff and the Class have suffered damage; that State Farm violated the laws regarding overtime, regular, and minimum wage compensation; that State Farm failed to comply with the law with respect to itemized wage statements; that State Farm engaged in any unlawful, unfair or fraudulent business practices; that State Farm engaged in any wrongful conduct as alleged in the Action; or that the Named Plaintiff was harmed by the conduct alleged in the Action.  Neither this Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is, may be construed as, or may be used as an admission, concession or indication by or against State Farm of any fault, wrongdoing or liability whatsoever.

### F.   <u>PLAINTIFF'S CLAIMS</u>

The Named Plaintiff has claimed and continues to claim that the Released Claims have merit and give rise to liability on the part of State Farm.  This Agreement is a compromise of disputed claims.  Nothing contained in this Agreement and no documents referred to herein and no action taken to carry out

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

this Agreement may be construed or used as an admission by or against the Named Plaintiff or Class Counsel as to the merits or lack thereof of the Claims asserted.

## I.   STIPULATION AND AGREEMENT

*NOW, THEREFORE, IT IS HEREBY STIPULATED*, by and among the Named Plaintiff on behalf of the Class Members on the one hand, and Defendant on the other hand, and subject to the approval of the United States District Court – Central District of California, that the Action is hereby being compromised and settled pursuant to the terms and conditions set forth in this Agreement and that upon the Effective Date, and the payment by State Farm of all monies due under the Agreement, the Parties shall file a Satisfaction of Judgment with the Court, subject to the continuing jurisdiction of the United States District Court – Central District of California, as set forth below, subject to the definitions and recitals set forth hereinabove which by this reference become an integral part of this Agreement and subject to the following terms and conditions:

1.   Full Investigation.  Named Plaintiff and Plaintiff's Counsel have fully investigated the factual and legal bases for the causes of action asserted in the Action.

2.   Release As To All Class Members.  As for the class period as defined in paragraph 9, *supra,* the Class Members, including the Named Plaintiff, release the Released Parties from the Released Claims.

With respect to the Released Claims, Class Members expressly waive all rights under Section 1542 of the California Civil Code.  Said Section reads as follows:

**Section 1542.  [General Release – Claims Extinguished.]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.**

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims asserted in the Complaint, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims asserted in the Complaint, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Members agree not to sue or otherwise make a claim against any of the Released Parties for the Released Claims.

3.    <u>General Release By Named Plaintiff Only</u>.  In addition to the releases made by the Class Members as set forth in Section I, paragraph 2 hereof, Named Plaintiff, in exchange for the Service Award as requested or as otherwise authorized by the Court, will, as of the Effective Date, make the additional following General Release of all Claims, known or unknown, in exchange and consideration of the sums set forth in paragraph 38.  Named Plaintiff agrees to the General Release of the Released Parties.  Named Plaintiff also agrees to release all wage and hour Claims, including, but not limited to, overtime wages, meal and rest period sanctions, penalties under the Private Attorneys General Act and all other Released Claims.  Also, without limiting the generality of the foregoing: NAMED PLAINTIFF ALSO SPECIFICALLY AGREES AND ACKNOWLEDGES WAIVER OF ANY RIGHT TO RECOVERY BASED ON STATE OR FEDERAL AGE, SEX, GENDER, CITIZENSHIP, PREGNANCY, RACE, COLOR, NATIONAL ORIGIN, MARITAL STATUS, RELIGION, VETERAN

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

STATUS, DISABILITY, SEXUAL ORIENTATION, MEDICAL CONDITION OR OTHER ANTI-DISCRIMINATION LAWS, INCLUDING, WITHOUT LIMITATION, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT AND THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, OR BASED ON THE FAMILY AND MEDICAL LEAVE ACT, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT, THE WORKER ADJUSTMENT AND RETRAINING ACT, THE FAIR LABOR STANDARDS ACT AND THE CALIFORNIA LABOR CODE, ALL AS AMENDED, WHETHER SUCH CLAIM BE BASED UPON AN ACTION FILED BY EMPLOYEES OR BY A GOVERNMENTAL AGENCY.

The General Release includes any unknown Claims that Named Plaintiff does not know or suspect to exist in their favor at the time of the General Release, which, if known by each of them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement or the General Release.

With respect to the General Release, Named Plaintiff stipulates and agrees that, upon the Effective Date, Named Plaintiff shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Named Plaintiff may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the General Release, but Named Plaintiff upon the Effective Date shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the claims released pursuant to the General Release whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

4.    <u>Service Award</u>.  Subject to Court approval, in exchange for the release of all Released Claims and for his time and effort in bringing and prosecuting this matter, Named Plaintiff shall be paid up to a total of Twenty Thousand Dollars ($20,000.00), or such other distribution or lower amount as the Court may order. The Service Award for Named Plaintiff for acting as class representatives and for his general release in this matter is Twenty Thousand Dollars ($20,000.00), unless otherwise determined by the Court.  This payment is expressly made in return for a General Release of all employment Claims of Named Plaintiff against Defendant. The parties agree that $10,000 of the $20,000 is for Named Plaintiff's service award as a class representative and that the General Release is valued at $10,000. This time and effort payment shall be paid to the Named Plaintiff by the Claims Administrator no later than ten (10) business days after State Farm delivers the Total Maximum Settlement to the Claims Administrator for deposit into the Qualified Settlement Fund.  Such payment shall be made solely from the Total Maximum Settlement Fund.  The Parties agree that a decision by the Court to award Named Plaintiff an amount less than the amount stated above shall not be a

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

basis for Class Counsel to void this Stipulation.  The Claims Administrator shall issue a Form 1099 – MISC, Box 3 for the Service Awards.  Any amount awarded for service payments to the Named Plaintiff less than the requested amounts will result in the non-awarded funds to be awarded to settlement class members who have filed valid and timely claim forms in this matter on a proportionate basis to the amount of their individual settlement award.  The Named Plaintiff shall be solely and legally responsible to pay any and all applicable taxes on this payment and shall hold harmless Defendant from any claim or liability for taxes, penalties or interest arising as a result of the payment.  These time and effort and general release payments shall be in addition to the Named Plaintiff's share of the Settlement Amount as a Participating Class Member.

5.  <u>Tax Liability</u>.  State Farm makes no representations as to the tax treatment or legal effect of the payments called for hereunder, and Named Plaintiff is not relying on any statement or representation by State Farm in this regard.  Named Plaintiff understands and agrees that Named Plaintiff will be solely responsible for the payment of any taxes and penalties assessed on the payments described herein and will defend, indemnify, and hold State Farm free and harmless from and against any claims resulting from treatment of such payments as non-taxable damages, including the treatment of such payment as not subject to withholding or deduction for payroll and employment taxes.

6.  <u>CIRCULAR 230 DISCLAIMER</u>.  EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

7.   Creation Of The Qualified Settlement Fund And Administration Of The Settlement.  Within ten (10) business days after the Effective Date, State Farm shall deliver the settlement funds as required by this Stipulation (not to exceed the Total Maximum Settlement Fund) into the Qualified Settlement Fund created by the Claims Administrator.  The Five Million Dollars ($5,000,000) Total Maximum

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Settlement Fund payment that State Farm is required to pay, and will deliver into the Qualified Settlement Fund, includes State Farm's share of taxes, including the employer's portion of payroll taxes, including but not limited to, FICA, FUTA and SDI contributions, as set forth above in paragraphs 23 and 25.  In addition to the employer's portion of payroll taxes, payments from the Qualified Settlement Fund shall be made (1) for Service Awards to the Named Plaintiff, as specified in this Agreement and approved by the Court; (2) Attorney's Fees and Cost Award paid to Class Counsel, as specified in this Agreement and approved by the Court; (3) the Claims Administration Costs; and (4) the amount allocated to PAGA penalties to be paid to the California Labor Workforce and Development Agency.  The balance remaining shall constitute the Net Settlement Amount from which Net Individual Settlement Payment shall be made to the Participating Class Members, less applicable taxes.

   8. <u>Attorneys' Fees And Cost Award</u>.  State Farm agrees not to oppose or impede any application or motion by Class Counsel for attorneys' fees not in excess of One Million Five Hundred Thousand Dollars ($1,500,000.00), or Thirty (30%) percent of the Settlement Fund.  State Farm further agrees not to oppose any application or motion by Class Counsel for the reimbursement of any costs associated with Class Counsel's prosecution of this matter not in excess of Fifteen Thousand  ($15,000.00).  Any amount awarded for attorneys' fees and costs to Class Counsel less than One Million Five Hundred Thousand Dollars ($1,500,000.00) and Fifteen Thousand Dollars ($15,000.00), respectively, will result in the non-awarded amounts to be awarded to Participating Settlement Class Members who have filed valid and timely claim forms and have not opted out of the settlement in this matter on a proportionate basis to the amount of their individual settlement wards.  So long as there are no objections, Class Counsel shall be paid any Court-approved fees and costs no later than ten (10) business

days after State Farm delivers the Total Maximum Settlement to the Claims
Administrator for deposit into the Qualified Settlement Fund.  Class Counsel
further agrees that Class Counsel shall be solely responsible for any allocation of
the Fees and Costs Award between or among any other attorneys who have claims
for such fees.  Class Counsel shall be solely and legally responsible to pay all
applicable taxes on the payment made pursuant to this paragraph.  Forms 1099 –
MISC, Box 14 shall be provided to Class Counsel for the payments made pursuant
to this paragraph.

The Parties hereby agree that the attorneys for plaintiff will share in the
attorneys' fees in the following percentages:  The LAW OFFICE OF JOSEPH
ANTONELLI will receive Seventy-Five Percent (75%) of the total attorney fee
awarded by the Court and CONFORTI & CARRAS, APC will receive Twenty-
Five Percent (25%) of the total attorneys' fees awarded by the court.

9.  <u>Claims Administrator</u>.  The Claims Administrator shall be paid for the
costs of administration of the Settlement out of the Total Maximum Settlement
Amount as deposited in the Qualified Settlement Fund.  The estimate of such costs
of administration for the disbursement of the Total Maximum Settlement Amount
is Twenty-Five Thousand Dollars ($25,000.00).  Any amount awarded for costs of
administration to Rust Consulting, Inc., less than Twenty-Five Thousand Dollars
($25,000.00), will result in the non-awarded amount to be awarded to Settlement
Class Members who have filed valid and timely claim forms and have not opted
out of the settlement in this matter in a proportionate basis to the amount of their
individual settlement award.  This estimate includes all tasks required of the
Claims Administrator by this Agreement including the issuance of the Notice,
claim form, and reminder postcard, the required tax reporting on the settlement
amounts, including the issuing of W2 and 1099 forms (if any), as well as
calculation of employee withholding taxes and the employer payroll taxes.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Ten (10) court days prior to the Final Approval Hearing, the Claims Administrator shall provide the Court and all counsel for the Parties with a statement detailing the costs of administration of the Total Maximum Settlement Fund and the breakdown of the Total Maximum Settlement Fund.  A Form 1099 – MISC, Box 7 shall be issued to the Claims Administrator.

10.  <u>Preliminary Settlement Hearing</u>.  As part of this Settlement, the Parties agree to the following procedures for obtaining preliminary Court approval of the Settlement:

a. Plaintiff shall request a hearing before the United States District Court – Central District of California to request preliminary approval of the Settlement and to request the entry of the Preliminary Approval Order.

b. Simultaneous with the filing of the Stipulation and Settlement of Class Action Agreement, and solely for purposes of this Settlement, Named Plaintiff will request the Court to enter the Preliminary Approval Order, preliminarily approving the proposed Settlement, conditionally certifying the classes and setting a date for a Final Approval Hearing.

c. In conjunction with this hearing, Named Plaintiff will submit this Stipulation and Settlement of Class Action Agreement, which sets forth the terms of this Settlement Agreement, and will include proposed forms of all notices and other documents as attached hereto necessary to implement the Settlement.  The Order shall provide for Notice of the Settlement and related matters to be sent to Class Members as specified herein.

11.  <u>Settlement Administration/Management</u>.  The Individual Settlement Payments shall be managed and administered as follows:

a.  State Farm shall have no obligation to segregate the funds to be used to make the Individual Settlement Payments or taxes from its other assets. State Farm will retain exclusive authority over, and responsibility for, those funds.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

b.  Rust Consulting, Inc., or such other entity upon whom the Parties mutually agree, shall be retained to serve as Claims Administrator.  The Parties each represent they do not have any financial interest in the Claims Administrator or otherwise have a relationship with the Claims Administrator that could create a conflict of interest.

c.  State Farm shall provide the Claims Administrator and Law Office of Joseph Antonelli the Class List and Data Report within ten (10) business days of Preliminary Approval of the Settlement.

d.  Within fifteen (15) business days of receipt of the Class List and Data Report, the Claims Administrator shall mail the Notice Packet to each Class Member in accordance with paragraph (4)(i) *infra*.

e.  All Class Members will be eligible to submit a claim for an Individual Settlement Payment using the applicable Claim Form.  Class Members who submit the applicable Claim Form in compliance with paragraphs 14(d), *infra* will be Participating Settlement Class Members.

f.  No later than fifteen (15) calendar days before the Claim/Objection/Exclusion Deadline Date, the Claims Administrator shall send a reminder postcard to all Class Members who have not yet filed the applicable Claim Form, Request for Exclusion, or objection.   State Farm agrees to encourage class members to make claims, including sending out its own reminder letter to class members, ten (10) days before the Claims/Objection/Exclusion Deadline ("State Farm Reminder Letter").  State Farm agrees to present Class Counsel the State Farm Reminder Letter at least ten (10) days before it is mailed and then, once mailed, to notify Class Counsel of the date on which the State Farm Reminder Letters were mailed.  The State Farm Reminder Letter will be sent to all Class Members who have not filed a claim.

23

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

g.   Fourteen (14) calendar days prior to the Final Approval Hearing, the Claims Administrator shall provide State Farm and Law Office of Joseph Antonelli a report showing:  (i) the names and number of Class Members who have objected to or requested exclusion from the Settlement; (ii) the names of the Class Members who have timely filed fully completed Claim Forms (*i.e.*, Participating Class Members); and (iii) the amount owed to each Participating Class Member.

h.   The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement.

i.   The Claims Administrator shall be responsible for:  printing and mailing the Notices and the Claim Forms and Reminder Postcards to Class Members as directed by the Court; receiving and reporting the objections/requests for exclusion and Claim Forms submitted by Class Members; mailing Individual Settlement Payments to Participating Settlement Class Members; mailing the payment to the Labor Workforce Development Agency; and other tasks as the Parties mutually agree or the Court orders the Claims Administrator to perform (including the calculation and remittance of employer taxes).  The Claims Administrator shall keep State Farm, Defendant's Counsel and Plaintiff's Counsel timely apprised of the performance of all Claims Administrator responsibilities.

j.   The Claims Administrator, on State Farm's behalf, shall have the authority and obligation to make payments, credits and disbursements, including payments and credits in the manner set forth herein, to Participating Settlement Class Members calculated in accordance with the methodology set out in this Agreement and orders of the Court.

k.   Any tax return filing required by this Agreement shall be made by the Claims Administrator.  Any expenses incurred in connection with such filing shall be a cost of administration of the Settlement.

24

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

1    l.   No person shall have any claim against State Farm or Defendant's
2  Counsel, the Named Plaintiff, Class Members, the Class, Class Counsel or the
3  Claims Administrator based on distributions and payments made in accordance
4  with this Agreement.

5    12.  <u>Calculation Of Gross And Net Individual Settlement Payments</u>.  To
6  determine the Gross and Net Individual Settlement Payments, the Claims
7  Administrator will:

8    a.   Determine the Total Gross Wages, as defined by pertinent pay
9  codes as agreed upon by the Parties, paid to State Farm AEI Non-Exempt
10 Employees during the Class Period ("Total Gross Wages") as provided in the Class
11 List and Data Report.

12    b.   Determine the portion of the Total Gross Wages paid to each State
13 Farm AEI Non-Exempt Employee during the Class Period ("Individual Gross
14 Wages") as provided in the Class List and Data Report.

15    c.   Use each State Farm AEI Non-Exempt Employee's Individual
16 Gross Wages to determine what percent of the Total Gross Wages was earned by
17 each State Farm AEI Non-Exempt Employee during the applicable Class Period
18 ("Gross Wages Percentage Value").

19    d.   State Farm AEI Non-Exempt Employees will have the opportunity,
20 should they disagree with State Farm records, to provide documentation and/or an
21 explanation to show contrary evidence of their Individual Gross Wages during the
22 Class Period.  If there is a dispute or contrary evidence, the Claims Administrator
23 will consult with the Parties to determine whether an adjustment is warranted.  The
24 Claims Administrator shall determine the eligibility for, and the amounts of, any
25 Individual Settlement Payments under the terms of this Settlement Agreement.
26 Any disputes (including those concerning the Gross Individual Settlement Amount
27 of each State Farm AEI Non-Exempt Employees) not resolved by the Claims

25

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Administrator concerning the administration of the Settlement will be resolved by the Court, venue in United States District Court, Los Angeles, California, under the laws of the State of California.  Prior to any such involvement of the Court, counsel for the Parties will confer in good faith to resolve the dispute without the necessity of involving the Court.

       e.  Each State Farm AEI Non-Exempt Employee will be entitled to a percentage of the Net Settlement Amount that is equivalent to his/her Gross Wages Percentage Value ("Gross Individual Settlement Payment"), as described herein.

    i    State Farm shall provide AEI Non-Exempt Employees, on a claims-made basis, monetary compensation in the maximum total amount of Five Million Dollars ($5,000,000), less amounts Attorneys' Fees and Costs Awards, Service Awards, Claims Administration Costs, Employer's Share of employment taxes the Net Settlement Amount, the Seventy-Five Percent (75%) of the $15,000.00 Civil Penalty Payment, Twenty Thousand Dollars ($20,000.00), and enhancement payments to the Named Plaintiff (the "Net Settlement Amount" or "NSA").

    i    The NSA shall be divided as follows: (1) State Farm AEI Non-Exempt Employees employed from December 23, 2007 to December 24, 2011 will receive Ninety-Eight Percent (98%) of the NSA (Time Period 1); and (2) State Farm AEI Non-Exempt Employees employed from December 25, 2011 to May 31, 2013 will receive Two Percent (2%) of the NSA (Time Period 2.)  Each State Farm AEI Non-Exempt Employee will be entitled to a percentage of his/her respective portion that is the equivalent of his/her Gross Wages Percentage Value.

    i    If the calculation described above results in a calculated payment to a State Farm AEI Non-Exempt Employee of less than Fifty Dollars ($50), that State Farm AEI Non-Exempt Employee's payment will be increased to Fifty

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

Dollars ($50). State Farm AEI Non-Exempt Employees will receive a minimum payment of Fifty ($50), so long as such payment will not increase the overall Net Settlement Amount. If payments pursuant to this paragraph would require an increase in the overall Net Settlement Amount, no increase will be made and each State Farm AEI Non-Exempt Employee will receive an amount equal to the original result of his/her calculated payment, even if that result is less than Fifty Dollars ($50).

      f. The Net Settlement Amount shall include the State Farm AEI Non-Exempt Employees' share of the PAGA Payments remaining after three quarters of the payment is made to the California Labor Workforce Development Agency. From each State Farm AEI Non-Exempt Employee's Gross Individual Settlement Payment the Parties shall apportion Forty Percent (40%) to wages ("Wage Component") and Sixty Percent (60%) to interest and penalties. The portion of each State Farm AEI Non-Exempt Employee's Gross Individual Settlement Payment that constitutes the Wage Component will be reduced by any required legal deductions for each State Farm AEI Non-Exempt Employee. Standard employer and employee payroll deductions will be made for state and federal withholding taxes and any other applicable payroll deductions owed by the Participating Class Members as a result of the Wage Component, resulting in a "Net Wage Component." The Claims Administrator will issue one (1) check and W-2 Form to each Class member for the Wage Component and the interest and penalty portion of the Gross Individual Settlement Payment. The Claims Administrator will detail the gross award and how it breaks down into a wage and penalty portion and provide a net payment for both. The Claims Administrator along with the check will provide a separate document which is broken down into quarters and it includes the following: A detailed breakdown of the payment, tax withholding, and why they are receiving the check; a W-2; a 1099; and a

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

perforated check at the bottom.

g.   No withholding shall be made on the interest and penalty portion of the Gross Individual Settlement Payment.  The Claims Administrator will issue an IRS Form 1099 for the remaining interest and penalty component.

h.   The Net Wage Component shall be added to the penalties and interest component, resulting in the Net Individual Settlement Payment.

i.   Any and all amounts remaining in the Net Individual Settlement Amount that were not claimed by State Farm AEI Non-Exempt Employees through the claims process shall be distributed to the State Farm AEI Non-Exempt Employees who are Participating Settlement Class Members on a pro rata basis and thereby proportionally increasing the Individual Settlement Payments to the State Farm AEI Non-Exempt Employees who are Participating Settlement Class Members based upon their Gross Wages Percentage Value.

j.   The Claims Administrator shall be responsible for issuing the payments and calculating and withholding all required state and federal taxes.

13.   <u>Notice To Class Members</u>.  Notice of the Settlement shall be provided to all Class Members using the following procedures:

a.   <u>Notice By First-Class Mail</u>.  Within fifteen (15) business days after receipt of the Class List and Data, the Claims Administrator shall mail the Notice Packet to the Class Members via first-class regular U.S. mail.  Prior to mailing, the Claims Administrator will perform a search based on the National Change of Address Database information to update and correct for any known or identifiable address changes.  If a new address is obtained by a way of a returned Notice Packet, then the Claims Administrator shall promptly forward the original Notice Packet to the updated address via first-class regular U.S. mail indicating on the original Notice Packet the date of such re-mailing.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   b. <u>Claims/Objection/Exclusion Deadline Date</u>:  Class Members will have forty five (45) calendar days from the mailing of the Notice Packet to submit their valid signed Claim Form, or to submit an objection and/or request for exclusion from the Settlement Class.

   c. <u>Reminder Post Card</u>.  No later than fifteen (15) calendar days before the Claims/Objection/Exclusion Deadline Date, the Claims Administrator shall send a reminder postcard to all Class Members who have not yet filed a Claim Form or objection.

   d. <u>Procedure For Undeliverable Notices and Claim Forms</u>.  Any Notices returned to the Claims Administrator as non-delivered on or before the Claims/Objection/Exclusion Deadline Date shall be sent to the forwarding address affixed thereto within five (5) business days.  If no forwarding address is provided, then the Claims Administrator shall promptly attempt to determine a correct address using a single skip-trace, computer or other search using the name and address of the individual involved, and shall then perform a single re-mailing within five (5) business days.  Those Class Members that receive a re-mailed Notice shall have their deadline for submitting a Claim Form or an objection to the Settlement extended fifteen (15) days from the post mark date of re-mailing.  In the event the procedures in this paragraph are followed and the intended recipient of a Notice still does not receive the Notice, the Class Member shall be bound by all terms of the Settlement and any Final Judgment entered by the Court if the Settlement is approved by the Court.  The Claims Administrator shall not re-mail any Reminder Post Cards returned as undeliverable.

   e. Within fourteen (14) calendar days of the Final Approval Hearing, the Claims Administrator shall provide State Farm and Law Office of Joseph Antonelli a report showing:  (i) the names and number of Class Members who have submitted timely and valid claim forms; (ii) the names and telephone numbers of

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

the Class Members objecting to or requesting exclusion from the Settlement; (iii) the names and contact information of the Class Members who have submitted a completed Claim Forms, objection, or requested exclusion from the settlement; and (iv) the amount owed to each Participating Class Member.

14. <u>Procedure For Objecting To/Requesting Exclusion From The Class Action Settlement</u>. The Class Members shall submit objections to the Settlement and/or request exclusion from the Settlement, using the following procedures:

a. <u>Procedure For Objecting</u>. The Notice shall provide that those Class Members who wish to object to the Settlement must mail a written statement of objection ("Notice of Objection") to the Claims Administrator, all Class Counsel and Defendant's Counsel no later than the Claims/Objection/Exclusion Deadline Date. The postmark date of the mailing shall be deemed the exclusive means for determining that a Notice of Objection is timely. The Notice of Objection must contain a statement of the Class Member's objections, a statement advising if the objecting Class Member plans to address the Court at the Settlement Fairness Hearing, and any legal briefs, papers or memoranda the objecting Class Member proposes to submit to the Court. Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement. No later than fourteen (14) calendar days before the Settlement Fairness Hearing, the Claims Administrator shall provide counsel for the Parties with complete copies of all objections received, including the postmark dates for each objection. Class Members who submit a timely Notice of Objection as specified above will have a right to appear at the Settlement Fairness Hearing in order to have their objections heard by the Court.

b. <u>Procedure For Requesting Exclusion</u>. The Notice shall provide that Class Members who wish to exclude themselves from the Class must submit a

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

written request to be excluded from the Class on or before the Claims/Objection/Exclusion Deadline Date.  Such request for exclusion:  (1) must contain the name, address, telephone number and the last four digits of the Social Security number of the person requesting exclusion; (2) must be returned by mail to the Claims Administrator at the specified address; (3) and must be postmarked on or before the Claims/Objection/Exclusion Deadline Date.  The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  Any Class Member who requests an exclusion from the Class will not be entitled to any recovery under the Settlement and will not be bound by the Settlement or have any right to object, appeal or comment thereon.  Class Members who fail to submit valid and timely requests for exclusion on or before the Objection/Exclusion Deadline Date shall be Class Members and shall be bound by all terms of the Settlement and any Final Judgment entered in this Class Action if the Settlement is approved by the Superior Court.  No later than fourteen (14) calendar days before the Settlement Fairness Hearing, the Claims Administrator shall provide counsel for the Parties with a complete list of all members of the Settlement Class who have timely requested exclusion from the Settlement.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage members of the Settlement Class to submit requests for exclusion from the Settlement.

       c.  <u>No Solicitation Of Settlement Objections</u>.  The Parties agree to use their best efforts to carry out the terms of this Settlement.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from the Order and Final Judgment.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

d. <u>Procedure For Submission Of Claim Form</u>.  The Class Members shall submit claims for Individual Settlement Payments, using the following procedures:

(1)     Class Members may only receive an Individual Settlement Payment if they timely and validly submit a Claim Form, or submit a Claim Form consistent with the cure provisions for defective claims set forth in paragraph 14(d)(4) *infra* and, in so doing, become Participating Settlement Class Members.

(2)     The Claim Form shall include instructions on how to submit the form, and shall notify Plaintiffs of the Claims/Objection/Exclusion Deadline Date. The date of the postmark on the return envelope shall be the exclusive means used to determine whether a Settlement Class Member has "timely" returned his/her Claim Form on or before the Claims/Objection Deadline Date.  Claim Forms received by the Claims Administrator that have been postmarked after the Claims/Objection/Exclusion Deadline Date shall be paid only if they are otherwise valid and if the Parties so agree.

(3)     For purposes of this Agreement, a Claim Form shall be deemed "valid" only if:  (a) the Class Member has provided on the Claim Form his or her name and the last four digits of his or her Social Security number; (b) the Class Member has dated and signed the Claim Form; and (c) the name and the last four digits of the Social Security number provided by the Class Member on the Claim Form match State Farm records.  The name and last four digits of the Social Security number provided by the Class Member will be deemed to match State Farm records only if:  both the first name and the last name and the last four digits of the Social Security number provided by the Class Member match State Farm records; or the first name and the last four digits of the Social Security number provided by the Class Member match State Farm records and it appears the last

32

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

name has been changed as a result of a change in marital status or other legal name change.

> (4)     State Farm will provide the Claims Administrator with the Social Security Numbers of Class Members who have authorized State Farm to disclose their Social Security Numbers by submitting valid Claim Forms.

> (5)     If a Class Member's Claim Form is defective as to any of these three requirements, the Class Member shall still be a Class Member and shall be given an opportunity to cure the defect(s).  Any such Claim Form shall be returned to the Class Member after no later than five (5) business days, with a letter advising that the claim is defective and must be cured to become valid information regarding the defect(s) ("Cure Letter").  The language of the Cure Letter will be agreed upon by the Parties prior to mailing.  The Cure Letter shall state that the Class Member has ten (10) days from the date of the Cure Letter or until the submission deadline, whichever date is later, to postmark a revised claim.  If the revised Claim Form is not postmarked within the allotted time period, it shall be deemed untimely and shall be paid only if it is otherwise valid and as the Parties so agree.  If a Class Member responds to a Cure Letter by filing a second defective claim, then the Claims Administrator shall have no further obligation to give notice of a need to cure.  Such defective claims will be considered invalid and Class Members will have no right to cure them.  Although Class Members who do not submit a valid and timely Claim Form may not receive an Individual Settlement Payment, such persons shall nonetheless be bound by all terms of the Settlement and any Final Judgment entered in these Actions if the Settlement is approved by the Court.

/////

/////

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

15.   Procedure For Payment Of Individual Settlement Payments:

a.  All Class Members who submit a valid and timely Claim Form will receive an Individual Settlement Payment from State Farm distributed through the Claims Administrator.

b.  Individual Settlement Payments for Class Members shall be paid pursuant to the settlement formula set forth herein, and shall be mailed within fifteen (15) calendar days after State Farm delivers the Total Maximum Settlement to the Claims Administrator for deposit into the Qualified Settlement Fund.

c.  Should any question arise regarding the determination of eligibility for, or the amounts of, any Individual Settlement Payment under the terms of this Agreement, Class Counsel and Defendant's Counsel shall meet and confer in an attempt to reach agreement.  If they cannot agree, the Claims Administrator shall make the final determination, and that determination shall be conclusive, final and binding on all Parties, including all Class Members.

d.  Any checks paid to members of the Settlement Class shall remain valid and negotiable for one hundred and eighty (180) days from the date of their issuance and may thereafter automatically be cancelled if not cashed by the Participating Settlement Class Member within that time.  If so cancelled, the Participating Settlement Class member's claim will be deemed void and the funds shall go to the State of California, California Department of Industrial Relations Unpaid Wage Fund, in the claimants' names to be held as unclaimed property for the benefit of the Participating Settlement Class Member.  At the conclusion of the 180-day check cashing period, the Claims Administrator shall inform the Parties regarding the status of any uncashed checks, including the amount and identity of the Participating Settlement Class Member.  The class member can contact the California Department of Industrial Relations and make a claim to obtain their voided settlement amount. The California Department of Industrial Relations who

34

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

works in conjunction with the State Controller's office and can be contacted through http://www.dir.ca.gov/dlse/DistrictOffices.htm, (415) 703-4810 San Francisco, CA – headquarters.

16. <u>Claims Deemed Waived</u>.  Any Class Member who does not submit a Claim Form and who does not request exclusion is deemed to have no claim for an Individual Settlement Payment with respect to any Released Claims.

17. <u>Option To Terminate Settlement</u>.  If State Farm AEI employees who otherwise would be Class Members have filed with the court timely objections or requests for exclusion from the Class according to the terms of this Agreement, and the number of such individuals is greater than ten percent (10%) of all AEI employees, State Farm shall have, in its sole discretion, the option to terminate this Settlement.

18. <u>Certification By Claims Administrator</u>.  Upon completion of administration of the distributions, the Claims Administrator shall provide written certification of such completion to the Court and counsel for all Parties.

19. <u>Final Settlement Approval Hearing And Entry Of Final Judgment</u>. Upon expiration of the Claims/Objection/Exclusion Deadline Date, with the Court's permission, a Final Fairness Hearing shall be conducted to determine final approval of the Settlement along with the amount properly payable for (i) reasonable attorneys' fees and costs, (ii) any Service Awards, and (iii) cost of administration.  The Final Fairness Hearing shall not be held earlier than thirty (30) calendar days from Claims/Objection/Exclusion Deadline Date.  Upon final approval of the Settlement by the Court, the Parties shall present the Final Judgment to the Court for its approval.  After entry of the Final Judgment, the Court shall have continuing jurisdiction solely for purposes of addressing:  (i) the interpretation and enforcement of the terms of the Settlement; (ii) Settlement

35

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

administration matters; and (iii) such post-Final Judgment matters as may be appropriate under court rules or as set forth in this Agreement.

20.   <u>Nullification Of Settlement Agreement</u>.  In the event:  (i) the Court does not enter the Order specified herein; (ii) the Court does not finally approve the Settlement as provided herein; (iii) the Court does not enter a Final Judgment as provided herein, which becomes final as a result of the occurrence of the Effective Date; (iv) State Farm elects to terminate the Settlement as set forth herein; or (v) the Settlement does not become final for any other reason, this Settlement Agreement <u>shall be null and void</u> and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning.  In such a case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed, except that any fees already incurred by the Claims Administrator shall be paid in equal parts by Named Plaintiff and State Farm.  In the event an appeal is filed from the United States District Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review, but any fees incurred by the Claims Administrator prior to it being notified of the filing of an appeal from the United States District Court's Final Judgment, or any other appellate review, shall be paid in equal parts by Named Plaintiff and State Farm to the Claims Administrator within thirty (30) days of said notification.

21.   <u>No Effect On Employee Benefits</u>.  The Gross Individual Settlement Payments, Individual Settlement Payments and Service Awards to Named Plaintiff or other Class Members shall be deemed not to be pensionable earning and shall not have any effect on the eligibility for, or calculation of, any of the employee

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

benefits (*e.g.*, vacations, holiday pay, retirement plans, etc.) of the respective Named Plaintiff or Class Members.  The Parties agree that any Settlement Awards to Settlement Class Members under the terms of this Agreement do not represent any modification of the Class Members' previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare benefit plan sponsored by State Farm.  Further, any Gross Individual Settlement Payment, Individual Settlement Payment, or Service Awards hereunder shall not be considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual within, an employee pension benefit plan or employee welfare benefit plan sponsored by State Farm.  Neither Defendant nor Plaintiff are opining on the terms of any such Plan, each of which speaks for itself.

22.   <u>Publicity</u>.  Neither the Named Plaintiff nor Class Counsel shall issue any press release related in any way to the Settlement.  The Named Plaintiff and Class Counsel agree that, prior to preliminary approval of the Settlement, they will keep the terms of this Settlement confidential except for purposes of communicating with the Named Plaintiff and Class Members.  The Named Plaintiff and Class Members shall be informed that the Settlement is confidential and shall be advised to keep the Settlement confidential.  From and after preliminary approval of the settlement, the Class Members (including the Named Plaintiff and Class Counsel) may: (1) as required by law; (2) as required under the terms of the Settlement; or (3) as required under counsel's duties and responsibilities as Class Counsel, comment regarding the specific terms of the Settlement.  In all other cases, Named Plaintiff and Class Counsel agree to limit their statements regarding the terms of the Settlement, whether oral, written or electronic (including the World Wide Web), to say the Class Action has been resolved and that the Named Plaintiff and Class Counsel are satisfied with the Settlement terms.  Nothing in this paragraph is intended to interfere with Class Counsel's duties and obligations to faithfully

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

discharge their duties as Class Counsel, including but not limited to answering questions from Class Members, or to interfere with Class Counsel's practice of posting the Class Notice on their website.

23.   <u>Dispute Resolution</u>.  Except as otherwise set forth herein, all disputes concerning the interpretation, calculation or payment of settlement claims, or other disputes regarding compliance with this Agreement shall be resolved as follows:

a.  If the Named Plaintiff or Class Counsel, on behalf of the Named Plaintiff or any Settlement Class Member, or the Defendant at any time believes that the other Party has breached or acted contrary to the Agreement, that Party shall notify the other Party in writing of the alleged violation.

b.  Upon receiving notice of the alleged violation or dispute, the responding Party shall have ten (10) calendar days to correct the alleged violation and/or respond to the initiating Party with the reasons why the Party disputes all or part of the allegation.

c.  If the response does not address the alleged violation to the initiating Party's satisfaction, the Parties shall negotiate in good faith for up to ten (10) calendar days to resolve their differences.

d.  If Class Counsel and Defendant are unable to resolve their differences after twenty (20) calendar days, either Party may file an appropriate motion for enforcement with the Court.  The briefing of such motion should be in letter brief form and shall not exceed five (5) single-spaced pages (excluding exhibits).

e.  Reasonable attorneys' fees and costs for work done in resolving a dispute under this Section may be recovered by any Party that prevails under the standards set forth within the meaning of applicable law.

24.   <u>No Retaliation</u>.  State Farm shall not take any adverse action against any Class Member because of the existence of, and/or participation in, the Settlement,

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

or because they choose to benefit from the Settlement or to object to the Settlement.  State Farm shall not take action to discourage Class Members from participating in the Settlement.  Notice to the Class Members will include a statement that State Farm will not retaliate against Class Members for participating in the Settlement. Further as stated *supra*, State Farm will take action to encourage Class Members to file a claim by sending a reminder letter to each Class Members pursuant to the terms set forth herein.

25.  <u>Exhibits And Headings</u>.  The terms of this Agreement include the terms set forth in any attached **Exhibits 1 and 2**, which are incorporated by this reference as though fully set forth herein.  Any exhibits to this Agreement are an integral part of the Settlement.  The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

26.  <u>Interim Stay Of Proceedings</u>.  The Parties agree to hold all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, in abeyance pending the Settlement Hearing to be conducted by the Court.

27.  <u>Amendment Or Modification</u>.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

28.  <u>Entire Agreement</u>.  This Agreement and any attached exhibits constitute the entire agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  State Farm shall not be required as part of the Settlement to modify or eliminate any of its personnel, compensation or payroll practices, or adopt any new personnel, compensation or payroll practices.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

29.   <u>Authorization To Enter Into Settlement Agreement</u>.  Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.  The persons signing this Agreement on behalf of State Farm represent and warrant that they are authorized to sign this Agreement on behalf of State Farm.

30.   <u>Binding On Successors And Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

31.   <u>California Law Governs</u>.  All terms of this Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

32.   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

33.   <u>This Settlement Is Fair, Adequate And Reasonable</u>.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of this Action and have arrived at this Settlement after extensive arms-length negotiations, taking into account all relevant factors, present and potential.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

34.   <u>Jurisdiction Of The Court</u>.  The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

35.   <u>Cooperation And Drafting</u>.  Each of the Parties has cooperated in the drafting and preparation of this Agreement.  Hence, in any construction made to this Agreement, the same shall not be construed against any of the Parties.

36.   <u>Invalidity Of Any Provision</u>.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

37.   <u>Amendment Of Complaint</u>. As part of the Preliminary Approval Process, Named Plaintiffs shall amend the Complaints to add a cause of action for <u>LC</u> §203 penalties, <u>LC</u> §226, and <u>LC</u> §2699 claims, as well as unpaid wages under the Federal Labor Standards Act ("FLSA").

38.   Defendants will stipulate to leave to amend as set forth in this paragraph.  In the event that the Settlement does not become final for any reason, then any Order permitting the filing of the Amended Complaints shall be treated by the Parties as void *ab initio*.

39.   <u>Named Plaintiff's Waiver Of Right To Be Excluded And Object</u>.  The Named Plaintiff agrees to sign this Agreement and by signing this Agreement is bound by the terms herein stated and further agrees not to object to any of the terms of this Agreement.  Non-compliance by the Named Plaintiff with this paragraph shall be void and of no force or effect.  Any such objection shall therefore be void and of no force or effect.

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

**PLAINTIFF**

Dated: 5-25-13

BRYAN SHIOSAKA

Represented By:

**LAW OFFICE OF JOSEPH ANTONELLI**

Dated: May 29, 2013

By:_____

Joseph Antonelli, Esq.
Attorney for Plaintiff Bryan Shiosaka

**CONFORTI & CARRAS, APC**

Dated: _____

By:_____

Michael J. Carras.
Attorney for Plaintiff Bryan Shiosaka

**DEFENDANT**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Dated: _____

By:_____

Its: _____

Represented By:

**SIDLEY AUSTIN LLP**

Dated: _____

By:_____

Douglas R. Hart, Esq.
Sheryl Horwitz, Esq.
Attorneys for Defendant State Farm Mutual
Automobile Insurance Company

42

LA1 2715... **STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

**PLAINTIFF**

Dated: _____          _____
                                  BRYAN SHIOSAKA

    Represented By:

**LAW OFFICE OF JOSEPH ANTONELLI**

Dated: _____          By:_____
                                  Joseph Antonelli, Esq.
                                  Attorney for Plaintiff Bryan Shiosaka

**CONFORTI & CARRAS, APC**

Dated: 5/17/2013 _____         By:_____
                                  Michael J. Carras.
                                  Attorney for Plaintiff Bryan Shiosaka

**DEFENDANT**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Dated: _____          By:_____

    Its: _____

    Represented By:

**SIDLEY AUSTIN LLP**

Dated: _____          By:_____
                                      Douglas R. Hart, Esq.
                                      Sheryl Horwitz, Esq.
                                      Attorneys for Defendant State Farm Mutual
                                      Automobile Insurance Company

42

LA1 27∫3020v1 **STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

1    **PLAINTIFF**

2    Dated: _____    _____

3                                BRYAN SHIOSAKA

4                                 Represented By:

5                                **LAW OFFICE OF JOSEPH ANTONELLI**

6

7    Dated: _____    By: _____

8                                Joseph Antonelli, Esq.

9                                Attorney for Plaintiff Bryan Shiosaka

10                               **CONFORTI & CARRAS, APC**

11

12   Dated: _____    By: _____

13                               Michael J. Carras.

14                               Attorney for Plaintiff Bryan Shiosaka

15   **DEFENDANT**

16                               STATE FARM MUTUAL AUTOMOBILE
                                 INSURANCE COMPANY
17

18   Dated: *June 3, 2013*

19                               By: _____

20                               Its: *VP Operations – HR*

21

22                                Represented By:

23   **SIDLEY AUSTIN LLP**

24

25   Dated: *6/3/2013*           By: _____

26                               Douglas R. Hart, Esq.

27                               Sheryl Horwitz, Esq.
                                 Attorneys for Defendant State Farm Mutual
28                               Automobile Insurance Company

**STIPULATION AND SETTLEMENT OF CLASS ACTION CLAIMS**

**Exhibit 1**

*UNITED STATES DISTRICT COURT – CENTRAL DISTRICT OF CALIFORNIA*
*WESTERN DIVISION*

**<u>Bryan Shiosaka v. State Farm Mutual Automobile Insurance Company</u>**
**United States District Court – Central District of California**
**Case No.: CV 12 1268-CAS (CXx)**

# <u>NOTICE OF CLASS ACTION SETTLEMENT</u>

**Read this notice carefully.  If you worked for State Farm Mutual Automobile Insurance Company as an Automotive Estimatics Inspector ("AEI") during the time period described below, your legal rights may be affected.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

**YOU ARE HEREBY NOTIFIED** that a proposed settlement ("Settlement") of the above-captioned class action  pending in the United States District Court – Central District of California, which has been reached by the parties.  On_____, the Settlement was granted preliminary approval by the Court supervising the case.  You are receiving this notice because the records in the case indicate that you are a Class Member, as described above.  The purpose of this Notice is to describe the litigation, to inform you of the Settlement, and to inform you of your rights and options in connection with the Settlement.  If approved by the Court, the Settlement will resolve all claims in the above-captioned case.  A hearing will be held on _____at __:__ a.m. in Courtroom 5 – 2nd Floor of the Central District Court of the United States, to determine whether the Court should order final approval of this Settlement.  If you have any questions, you may contact Class Counsel (see paragraph (II)(6) below).  **PLEASE DO NOT CONTACT THE COURT.**

## I.  <u>SUMMARY OF LITIGATION</u>

1. On December 21, 2011, Bryan Shiosaka (Named Plaintiff), filed a class action lawsuit against State Farm Mutual Automobile Insurance Company ("State Farm") currently entitled <u>Bryan Shiosaka v. State Farm Mutual Automobile Insurance Company</u>, United States District Court Case No.: CV 12 1268-CAS (CXx).

2. Mr. Shiosaka alleges that State Farm failed to properly pay all wages, including overtime to Automotive Estimatics Inspector (AEI) non-exempt hourly employees; failure to promptly pay all wages due and owing at the time of an employee's termination or discharge;  failure to issue proper pay stubs, and owes waiting time penalties to all terminated AEI employees, pursuant to the California Labor Code.  The Named Plaintiff also alleges that State Farm failed to properly pay wages and overtime under the federal Fair Labor Standards Act.  The Named Plaintiff alleges that the above violations constitute unfair business practices pursuant to <u>Business & Professions Code</u> § 17200 and that State Farm is liable for penalties pursuant to the Private Attorneys General Act of 2004.

3. State Farm strongly denies these allegations and contends that it fully complied with the law.

4. The Court has not decided that State Farm did anything wrong. The parties have reached a settlement to avoid the costs of litigation.

5. On _____, through stipulation by the parties, the Court conditionally certified the case as a class action for settlement purposes. This does not mean that the Class would have been successful had the case gone to trial. The Court has made no such determination, and the Settlement is not to be construed as an expression of any opinion by the Court as to the merits of any of the claims asserted against Defendant. The Settlement class consists of "all persons who are or were previously employed by State Farm in California as an AEI at any time between December 23, 2007 and May 31, 2013, and who do not opt-out of the class" (hereinafter referred to as "Settlement Class Members").

6. A Settlement has been entered into between the Named Plaintiff and State Farm, which will resolve all past and present claims against State Farm, as claimed in the current complaint, relating to unpaid wages, interest, and penalties by members of the Class between December 23, 2007 and May 31, 2013. The Settlement has been given preliminary approval by the Court. If you are part of the Settlement Class as defined above, you will have the opportunity to participate in the Settlement.

7. The Class Counsel has conducted a thorough investigation into the facts applicable to this lawsuit. Class Counsel and the Class Representative believe that the Settlement is fair, reasonable and adequate. Class Representative and Class Counsel have entered into the Settlement after weighing the substantial benefits against the probabilities of success or failure and the long delays that would be likely if the case proceeded to trial. Class Representative and Class Counsel have concluded that settling with State Farm pursuant to the terms of the Settlement Agreement, a copy of which is on file with the Court, is in the best interest of the class. Under the terms of the Settlement, State Farm denies that they are liable and deny that they engaged in any wrongdoing or unfair business practices with respect to the claims in the payment of wages and interest to hourly AEIs, who worked in the State of California for State Farm during the class period. State Farm has entered into the settlement due to the cost of continuing the litigation, the long period of time that the suit would continue before resolution and the inherent uncertainties of success or failure in litigation.

**YOUR LEGAL RIGHTS AND OPTIONS:**

| | |
|---|---|
| **Return a Claim Form** | **You will receive settlement funds in exchange for giving up certain rights.** |
| | If you timely return the enclosed Claim Form and are eligible, you will receive a share of the settlement proceeds. If the settlement is granted final approval by the Court, you will be bound by the settlement and you will have released the claims set forth in the release. |
| **Do nothing** | **You will not receive a portion of the settlement proceeds. You will also give up certain rights.** |
| | If you do not return the Claim Form, you will not receive any settlement funds. You will also have released all claims as set forth above. |
| **Object/Request** | You also have the right to object to, or request exclusion from, the |

| Exclusion | settlement. |
|---|---|

Your options are more fully explained in this Notice. The deadline to submit a claim, an objection, or a request for exclusion is [45 days after mailing].

| **1.** | **Why did I receive this Notice?** |
|---|---|

You are a Class Member in the above-mentioned class action and are entitled to share in the settlement funds. <u>You are not being sued</u>. However, your rights may be affected by the legal proceedings in this action. This Notice informs you of your right to share in the settlement and your ability to object to the settlement.

The Parties to the litigation signed a Stipulation and Settlement Agreement of Class Action Claims ("Settlement Agreement") that fully sets forth the details of the settlement, and you may obtain a copy of the Agreement from either the Court or Class Counsel. (Details concerning where to get additional information, including a copy of the Agreement, are provided at the end of this notice.) The Agreement has been submitted to the Court, and has received preliminary approval. You have received this Notice because records indicate that you are a Class Member in the Lawsuit. The Court must approve the terms of the settlement described below as fair and reasonable to the class. The settlement will affect all members of the class. You will get money from the class action settlement, but only if you submit a valid and timely claim form as indicated below.

| **2.** | **What is the case about?** |
|---|---|

On December 23, 2011, Bryan Shiosaka (Named Plaintiff), filed a class action lawsuit against State Farm and is currently in United States District Court, entitled <u>State Farm Mutual Automobile Insurance Company, United States District Court Case No.: CV 12 1268-CAS (CXx)</u>. The Named Plaintiff alleges that State Farm failed to properly pay wages, including overtime to its non-exempt AEI employees, failed to provide legally compliant paystubs, and owes waiting time penalties pursuant to the California Labor Code. The Named Plaintiff also alleges that State Farm failed to properly pay wages and overtime under the federal Fair Labor Standards Act. The Named Plaintiff alleges that the above violations constitute unfair business practices pursuant to <u>Business & Professions Code</u> § 17200 and that State Farm is liable for penalties pursuant to the Private Attorneys General Act of 2004. State Farm strongly denies these allegations and contends that it fully complied with the law.

The Lawsuit consists of the following class:

All current and former Automotive Estimatics Inspector ("AEI") from December 23, 2007 to May 31, 2013 who submit a valid and timely claim form.

You have received this Notice because records indicate that you are a member of the class ("Class Member").

| 3. | What Are My Options? |
|---|---|

You may submit a claim form or do nothing.  You also have a right to object to the settlement or request to be excluded from the settlement if you submit a timely objection and/or request.  The option you choose affects whether you receive settlement monies and whether you give up certain rights.

### a.    How do I submit a claim?

If you timely submit a completed Claim Form, you will receive a settlement payment and you will release all claims that are released pursuant to the terms of the Settlement Agreement.

In order to receive settlement monies, you must return the enclosed claim form.  The Claim Form must be postmarked by [45 days after mailing].

**NOTE:   YOU WILL ONLY GET MONEY FROM THE SETTLEMENT IF YOU SUBMIT A VALID CLAIM FORM.   It is your responsibility to ensure the Claims Administrator has timely received your Claim Form.   You may contact that the Claims Administrator at the toll free number of _____ to ensure it has been received.   It is also your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your settlement award.   If you fail to keep your address current, you may not receive a settlement award.**

### b.    What happens if I do nothing?

If you do nothing (meaning you do not timely submit a completed claim form) you will not receive a settlement payment.  However, your rights will still be governed by the terms of the Settlement Agreement, and you will waive and release your right to bring claims pursuant to the waiver and release of claims provisions of the Settlement Agreement.

### c.    How do I object to the settlement?

If you are satisfied with the proposed settlement, you do not need to appear at the hearing at which the Court will consider final approval of the settlement.  If you object to the proposed settlement you must take the following steps:

(1)    You must mail a written statement of the objection stating the basis for the objection no later than **[45 days after mailing]** to all of the following:  (i) the _____ Claims Administrator c/o Rust Consulting, Inc., 625 Marquette Avenue, Suite 880, Minneapolis, MN 54402-2469; (ii) Class Counsel, a.) Joseph Antonelli, Esq., Janelle Carney, Esq., LAW OFFICE OF JOSEPH ANTONELLI, 14758 Pipeline Avenue, Suite E, Second Floor, Chino Hills, CA 91709, Phone No.:  (909) 393-0223, Fax No.: (909) 393-0471; b.)  ; (ii) Counsel for State Farm, Douglas R. Hart, Esq., Sheryl K. Horwitz, Esq., and Geoffrey DeBoskey, SIDLEY AUSTIN LLP, 555 West Fifth Street, Suite 4000, Los Angeles, California 90013, Phone No.: (213) 896-6000, Fax No.: (213) 896-6600 (State Farm's Counsel).

(2)    The written statement MUST include:  (i) a statement advising if you plan to address the Court at the hearing; (ii) a statement of your objections; and (iii) any other papers

which you propose to submit to the Court, including any legal briefs or memoranda.  You may appear personally, or through your own counsel, paid for at your expense.

The written request must be postmarked by [45 days after mailing], 2013.  If you have satisfied the requirements set forth above, you have the right to address the Court at the Final Approval Hearing scheduled for _____, 2013 before the Honorable Christina A. Snyder in Courtroom 5, 2nd Floor of the United States District Court – Central District of California, Western Division, located at 312 N. Spring Street, Los Angeles, CA 90012.

Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections to the Settlement Agreement, or any aspect of the proposed settlement, including, without limitation, the fairness, reasonableness or adequacy of the proposed settlement, or any award of attorneys' fees or reimbursement of costs and expenses.

> **d.    How do I request to be excluded from the settlement?**

If you wish to be excluded from the proposed settlement you must mail a written request for exclusion no later than **[45 days after mailing]** to the Claims Administrator c/o Rust Consulting, Inc., 625 Marquette Avenue, Suite 880, Minneapolis, MN 54402-2469.  The request MUST include a statement that you wish to be excluded from the settlement, your name, your address, your telephone number, and the last four digits of your Social Security number. The written request must be postmarked by [45 days after mailing], 2013.

If you request to be excluded from the settlement, you will not be entitled to any recovery under the settlement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon.

| 4.    How much can I expect to receive if I submit a claim? |
|---|

> **a.    Summary of settlement**

The maximum sum that State Farm will pay in connection with the settlement is Five Million Dollars ($5,000,000.00) ("Total Maximum Settlement Fund").  If you are a State Farm AEI Non-Exempt Employee, your individual settlement award will be based on your earnings during the Class Period.

Forty Percent (40%) of your individual settlement shall be considered wages, and the remaining Sixty Percent (60%) shall be considered interest and penalties for purposes of taxation.  State Farm will make all lawful payroll deductions from any payments paid to you as set forth in the Agreement.

Only those Class Members who submit a valid Claim Form will participate in the settlement ("Participating Settlement Class Member").

> **b.    Individual Settlement Payments**

**1.    To determine the Gross and Net Individual Settlement Payments, the Claims Administrator will:**

Determine from the NSF, the following allocation:  Settlement Class members employed from December 23, 2007 June 13, 2007 to through December 24, 2011 shall be allocated 98% of the NSF based on the formula set forth below.  Those employed from December 25, 2011 to May 31, 2013 shall be allocated 2% of the NSF based on the formula below.

a.      Determine the Total Gross Wages, as defined by pertinent pay codes as agreed upon by the Parties, paid to AEI Employees during the Class Period ("Total Gross Wages") as provided in the Class List and Data Report.

b.      Determine the portion of the Total Gross Wages paid to each AEI Employee during the Class Period ("Individual Gross Wages") as provided in the Class List and Data Report.

c.      Use each AEI Employee's Individual Gross Wages to determine what percent of the Total Gross Wages was earned by each AEI Employee during the applicable Class Period ("Gross Wages Percentage Value").

d.      Each AEI Employee will be entitled to a percentage of the Net Settlement Amount that is equivalent to his/her Gross Wages Percentage Value ("Gross Individual Settlement Payment"), as described herein and weighted depending on when in the class the employee worked.

**2.      Disputing the earnings.**

Your settlement share is based on your earnings and the formula described above during the class period.  If you dispute the earnings figure that is based on defendant's records, you must mail in your dispute and supporting documentation to the claims administrator by _____, 2012.  Failure to submit supporting documentation will result in your settlement share being based on defendant's records.

| **5.      How much will the Named Plaintiff and Class Counsel Receive?** |
| --- |

      **a.      <u>Will the Named Plaintiffs receive any additional payment?</u>**

Yes.  The Court will also be asked to award a service payment (also called an enhancement) to the Named Plaintiff of Twenty Thousand Dollars ($20,000.00).  The service payment will be paid from the Total Maximum Settlement Fund, which will reduce any payment made to you as a Participating Settlement Class Member.  This service payment is sought to compensate the Named Plaintiff for his efforts in assisting with the prosecution of the Action on behalf of the Class Members and in return for executing a General Release of all Claims against Released Parties.  State Farm agrees that the service award to Named Plaintiff is reasonable.  The actual amount awarded will be determined by the Court to ensure that the service payment amount is reasonable.

      **b.      <u>How will the attorneys for the class be paid?</u>**

You do not need to pay any portion of either Class Counsel or State Farm's attorneys' fees and costs.  All payments to Class Counsel for attorneys' fees and costs will be deducted from the Total Maximum Settlement Fund, which will reduce any payment made to you as a Participating

Settlement Class Member. Class Counsel will apply to the court for approval of their attorneys' fees and costs at the hearing scheduled for _____, 2013. Class Counsel will ask for attorneys' fees not in excess of One Million Five Hundred Thousand Dollars ($1,500,000.00), or Thirty Percent (30%) of the Settlement Fund, and will ask for the reimbursement of costs associated with their prosecution of this matter not in excess of Forty Thousand Dollars ($40,000.00). This sum includes approximately $25,000 to the claims administrator, Rust Consulting, Inc. The actual amount awarded will be determined by the Court to ensure that the amount of attorneys' fees and costs is reasonable.

| 6. | What are the rights at issue in this lawsuit? |
|---|---|

The settlement relates to the time that you worked at State Farm as a non-exempt hourly AEI employee. If the Settlement Agreement is approved, all Class Members will have released the "Released Parties" from the "Released Claims" as defined below and will be permanently barred from suing or otherwise making a claim against any of the Released Parties that is in any way related to the Released Claims. This is more completely set forth as follows:

The Class Members shall fully and finally release and discharge the Defendant of all applicable California wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising from or related to the claims litigated in the Action, and arising prior to May 31, 2013, including without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or other relief under California Business & Professions Code § 17200, et seq., based on the following categories of allegations: (a) all claims for unpaid overtime, regular, and minimum wages (including any and all claims for alleged failure to pay overtime, compensate Class Members for all hours worked, or properly calculate the regular rate); (b) all claims for the failure to promptly pay all wages due and owing at the time of an employee's termination or discharge; (c) all claims for the failure to issue properly itemized wage statements; (d) all related claims for Unfair Competition or Business Practices under California's Business and Professions Code or similar laws; (e) all claims for violations of Labor Code section 224; (f) all claims for any and all penalties pursuant to the Private Attorneys General Act of 2004 arising out of the aforementioned claims; and (g) all other claims that were or could have been asserted based on the facts alleged in the Action. Additionally, any Class Member who submits a Claim Form (and, in so doing, becomes a Participating Settlement Class Member) will be deemed to have opted into the action for purposes of the Fair Labor Standards Act and, as to those Participating Settlement Class Members, the Released Claims include any claims such Participating Settlement Class Members may have under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. Only those Settlement Class Members who submit valid claim forms will be deemed to have opted into the action for purposes of the Fair Labor Standards Act and thereby released and waived any of their claims under the Fair Labor Standards Act.

The Released Claims include any claims as discussed herein that the Class Members do not know or suspect to exist in their favor at the time of the release that do arise, or could have arisen, out of the claims alleged in the Action, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement. With respect to the Released Claims, Class Members expressly waive all rights under Section 1542 of the California Civil Code. Said Section reads as follows:

**Section 1542.  [General Release – Claims Extinguished.]  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.**

| | |
|---|---|
| **7.** | **Will I be subject to discipline based on whether I submit a claim?** |

No.  Your decision as to whether or not to submit a Claim Form will in no way affect your employment with State Farm.  State Farm is prohibited from retaliating in any way based on your decision whether or not to participate in the settlement.

| | |
|---|---|
| **8.** | **Where can I get additional information?** |

This Notice only summarizes this lawsuit, the Settlement Agreement, and related matters.  For more information, you may inspect the Court files at the Clerk of the Court for the United States District Court – Central District of California, Western Division, located at 312 N. Spring Street, Los Angeles, CA 90012, from 9:30 a.m. to 4:30 p.m., Monday through Friday.  If you have questions about the settlement, you may also contact Class Counsel as follows:

**Joseph Antonelli, Esq. and Janelle Carney, Esq.**
**LAW OFFICE OF JOSEPH ANTONELLI**
14758 Pipeline Avenue, Suite E, Second Floor,
Chino Hills, CA 91909
Tel: (909) 393-0223 and Fax: (909) 393-0471

Michael J. Carras, Esq.
**CONFORTI & CARRAS, APC**
151 N. Kraemer Blvd Ste. 204
Placentia, CA 92870
Telephone: (714) 577-1071

You may also contact the claims administrator as follows:

**[insert contact information]**

DO **NOT** TELEPHONE OR CONTACT THE COURT FOR INFORMATION
REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS.

**Exhibit 2**

*UNITED STATES DISTRICT COURT – CENTRAL DISTRICT OF CALIFORNIA*
*WESTERN DIVISION*

**__Bryan Shiosaka v. State Farm Mutual Automobile Insurance Company__**
**United States District Court – Central District of California**
**Case No.: CV 12 1268-CAS (CXx)**

# CLAIM FORM

**TO RECEIVE MONEY AS PART OF THIS SETTLEMENT,**
**YOU MUST COMPLETE AND SIGN THIS CLAIM FORM**

**YOU MUST MAIL THE COMPLETED AND SIGNED CLAIM FORM BY U.S. MAIL**
**POSTMARKED ON OR BEFORE [45 DAYS AFTER MAILING], 2013, IN THE**
**ENCLOSED SELF-ADDRESSED STAMPED ENVELOPE TO:**

**<<ADDRESS INSERT>>**
**<<                    >>**
**<<                    >>**
**<<                    >>**

**__Must be Postmarked No Later Than__: [45 days after mailing], 2013**

**YOU MUST TIMELY COMPLETE, SIGN AND RETURN THIS CLAIM FORM**
**TO CONSENT TO JOIN THE FAIR LABOR STANDARDS ACT PORTION OF THE**
**ACTION AND TO SHARE IN THE MONETARY RECOVERY**

Based on the information provided by State Farm Mutual Automobile Insurance Company  (State Farm), the approximate amount of your Individual Settlement Payment (not including any deductions for taxes) in connection with lawsuit entitled *Bryan Shiosaka v. State Farm Mutual Automobile Insurance Company,* in the United States District Court – Central District of California, Case No.: CV 12 1268-CAS (CXx) (the "Action") is $ _____. This amount may increase or decrease depending on the Court's Orders and the number of Participating Settlement Class Members.

**INSTRUCTIONS:**

Complete, sign and mail this form to share in the recovery and consent to join the FLSA portion of this action.

If you move, send us your new address.

Do not send any supporting documentation **__unless__** you dispute the information set forth below. If found eligible, you should not expect to receive any payment until approximately _____.

**SECTION 1**   This is the information that we have for you:  PRE-PRINTED INFO

<< INSERT FIRST NAME>>  <<INSERT LAST NAME>>

<< INSERT ADDRESS, CITY, STATE, ZIP>>

1 of 3

If any of this information is inaccurate, please provide the correct information below:

Name:

_____

Former Names (if any):

_____

Address:

_____

City, State, Zip:

_____

You were employed as an hourly non-exempt Automotive Estimatics Inspector (AEI) employee at State Farm during the Class Period (*i.e.*, December 23, 2007 to May 31, 2013). During that time the Gross Wages paid to you total $_____.  If any of this information is inaccurate, please provide documentation and a written explanation indicating the correct amount of Gross Wages.

**SECTION 2**   This information is required to verify your identity and administer your settlement award:

      Please provide the last four digits of your Social Security Number: ____.

I understand that, by signing below, I hereby acknowledge and agree that State Farm will, and authorize State Farm to, disclose my full Social Security Number to the Claims Administrator to be used solely for the purpose of administrating my settlement award.

If you agree with the information stated in Sections 1 and 2 above, please sign and return this Claim Form.  You have no obligation to provide additional documentation if you agree with the information stated above and have provided us with the last four digits of your Social Security Number. I further understand that, by signing below, I understand that I am releasing the "Released Parties" from the "Released Claims" as defined below and will be permanently barred from suing or otherwise making a claim against any of the Released Parties that is in any way related to the Released Claims.  This is more completely set forth as follows:

      I fully and finally release and discharge fully and finally release and discharge the Defendant of all applicable California wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, arising from or related to the claims litigated in the Action, and arising prior to May 31, 2013, including without limitation statutory, constitutional, contractual or common law claims for wages, damages, unpaid costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, equitable relief, or other relief under California Business & Professions Code § 17200, et seq., based on the following categories of allegations:  (a) all claims for unpaid overtime, regular, and minimum wages

2 of 3

(including any and all claims for alleged failure to pay overtime, compensate
Class Members for all hours worked, or properly calculate the regular rate); (b) all
claims for the failure to promptly pay all wages due and owing at the time of an
employee's termination or discharge; (c) all claims for the failure to issue
properly itemized wage statements; (d) all related claims for Unfair Competition
or Business Practices under California's Business and Professions Code or similar
laws; (e) all claims for violations of Labor Code section 224; (f) all claims for any
and all penalties pursuant to the Private Attorneys General Act of 2004 arising out
of the aforementioned claims; and (g) all other claims that were or could have
been asserted based on the facts alleged in the Action. Additionally, any Class
Member who submits a Claim Form (and, in so doing, becomes a Participating
Settlement Class Member) will be deemed to have opted into the action for
purposes of the Fair Labor Standards Act and, as to those Participating Settlement
Class Members, the Released Claims include any claims such Participating
Settlement Class Members may have under the Fair Labor Standards Act, 29
U.S.C. §§ 201, et seq.  Only those Settlement Class Members who submit valid
claim forms will be deemed to have opted into the action for purposes of the Fair
Labor Standards Act and thereby released and waived any of their claims under
the Fair Labor Standards Act.

I further understand that by signing below, I have opted-in to the Lawsuit for purposes of the
Fair Labor Standards Act (FLSA) and that I am releasing and waiving any FLSA claims
whether known or unknown, arising during the Class Period based on the claims related to the
facts and claims asserted in the Lawsuit.

I further understand that the Released Claims include any claims as discussed in the above
paragraphs that I do not know or suspect to exist in my favor at the time of the release that do
arise, or could have arisen, out of the claims alleged in the Action, which, if known by me,
might have affected my settlement with, and release of, the Released Parties or might have
affected my decision not to object to this Settlement.  With respect to the Released Claims, I
expressly waive all rights under Section 1542 of the California Civil Code.  Said Section reads
as follows:

> **Section 1542.  [General Release – Claims Extinguished.]  A
> general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time
> of executing the release, which if known to him or her must
> have materially affected his or her settlement with the debtor.**

I declare under penalty of perjury that the foregoing is true and correct and that I was employed
at State Farm as a non-exempt hourly AEI employee during the period of December 23, 2007
through May 31, 2013.  I have reviewed the Class Notice and this form and consent to join the
FLSA portion of this action and have the Named Plaintiff and Class Counsel represent me in
this action pursuant to 29 U.S.C. § 216(b).

X _____          _____
*(Sign your name here)*                                                          Date

**Exhibit 2**



**Settlement Administration Estimate**
**Shiosaka v State Farm Settlement**
**April 12, 2013**

Prepared by:
**Eric W Bishop**
**SVP, Client Services**
**612-359-2988**
**ebishop@rustconsulting.com**

## EXPERIENCE
With experience on more than 1,500 labor and employment cases, we are the nation's largest labor and employment settlement administrator.  We have managed settlements with class sizes ranging from 17 to multi-million class members. In fact, we've been trusted to administer many of the nation's largest settlements, including the nation's top wage-and-hour cases in recent years.

## DATA SECURITY
Our internal data security practices meet or exceed today's exacting industry standards.  Our enterprise-class data security measures are founded on standard business processes including a vigorous employee screening program, ongoing employee security training and a hardened production data center hosted at a Tier 1 network carrier, all designed for ensuring data integrity and security.

## DEDICATED SPECIALISTS
Our labor and employment case team is strictly dedicated to managing settlement administration for cases involving matters such as wage-and-hour, FLSA, discrimination and ERISA.  They're specialists, not generalists, with an industry reputation for responsiveness and expertise in relevant areas such as the applicable banking and tax regulations.  We are confident that Rust is the best choice for the administration of your settlement.

| Project Summary | | |
|---|---|---|
| Estimated Class Size | 377 | |
| Estimated Filing Rate | 90.0% | |
| | | |
| Project Cost | | |
| Print & Mail Notice | $ | 1,855 |
| Telephone Support | $ | 1,852 |
| Processing and Administration | $ | 1,442 |
| Fund Distribution & Tax Reporting | $ | 4,416 |
| Project Management | $ | 9,960 |
| Other Out-of-pocket Expenses | $ | 400 |
| Total Project Cost | $ | 19,925 |

**Key Assumptions**

**90% Claims Filing Rate**

**Telephone Support Included**

**Thank you for considering Rust Consulting, Inc. as your settlement administrator -- we appreciate the opportunity to submit this estimate.**



### Settlement Administration Estimate
### Shiosaka v State Farm Settlement
### April 12, 2013

**Prepared by:**
**Eric W Bishop**
**SVP, Client Services**
**612-359-2988**
**ebishop@rustconsulting.com**

**Key Assumptions Used to Prepare this Estimate**

| Class Size | 377 | | | |
|---|---|---|---|---|
| | | | **Standard Hourly Rates\*** | |
| Initial Mailed Notice: | | | SVP | $175-$275 |
| Mailed Notice | 377 | 100.0% | Senior Project Administrator | $160-$180 |
| Forwarded Notices | 9 | 2.5% | Project Manager | $100-$140 |
| Undeliverable Notices | 38 | 10.0% | Technical Consultant | $110-$180 |
| Re-Mailed Notices after Trace | 30 | 80.0% | Call Center Manager | $125 |
| | | | CSR | $ 43-$ 50 |
| Telephone Support: | | | Processor | $ 43-$ 50 |
| Number of Telephone Contacts | 94 | 25.0% | Other | $ 43-$125 |
| Connect Minutes per Call - CSRs | 5.0 | | *\*Subject to change* | |
| | | | | |
| Claimant Communications: | | | | |
| Claim Forms Received | 339 | 90.0% | | |
| Payments | 339 | 100.0% | | |

<u>Additional Administration Assumptions Used to Prepare this Estimate:</u>

Database Development: Receive and Process Database assumes that the data provided is complete with respect to the data components needed to mail and calculate settlement payments.  Data that includes multiple records for individuals or work history that needs to be accumulated and totaled by individual generally requires additional efforts to bring to a point where it is final settlement data.  These additional efforts can take a significant amount of time and should be considered when setting key settlement dates, especially the mailed notice deadline.  Data must be provided in a complete, consistent, standardized electronic format.  Rust's standard format is  ASCII fixed width complete with field layout.  Other formats may be accepted at Rust's discretion.  Resources used to enhance or further develop non-standardized data will be billed on a time and materials basis according to Rust's Current Standard Hourly Rates.

CASS/NCOA/LACS:  CASS - Coding Accuracy Support System; NCOA - National Change of Address; LACS - Locatable Address Conversion System.

Notice Package: Print and Mail per unit price is estimated.  Actual prices will be provided after form is finalized prior to mailing.  Notice package includes notice, claim form and exclusion form.

Telephone Support: Live Customer Service Representatives ("CSRs") will be available from the notice mail date until 60 days after fund distribution.  Sixty days after fund distribution, an Interactive Voice Response ("IVR") system will replace live CSR support and provide the caller with an option of leaving a message to have a CSR return the call. One hundred eighty days after fund distribution, case-specific telephone support will be discontinued and the caller will be instructed to call Rust's tax line with tax specific questions,  and otherwise to call class counsel.

Processing & Administration: Receipt and Process Claim Forms includes open, date stamp, label and data capture a 1-page claim form with up to five fields.  Validate Claim Forms includes the process of accepting or rejecting claims, handling disputes and curing deficient claims.

Project Management: Project Management fees are estimated and will be billed on actual time expended based on the rates found in the Current Standard Hourly Rates section above.  The rates included in the estimate are a blended estimate of the rates listed above.

Out of Pocket Expenses: Includes post office box rental, overnight shipments, postage, labels, travel, long distance and other miscellaneous charges and expenses.

**Pricing good for 90 days.**



**Settlement Administration Estimate**
**Shiosaka v State Farm Settlement**
**April 12, 2013**

Prepared by:
**Eric W Bishop**
**SVP, Client Services**
**612-359-2988**
**ebishop@rustconsulting.com**

| Administrative Task | Estimated Quantity | | Per Unit | | Task Amount | | Total |
|---|---|---|---|---|---|---|---|
| **Database Development** | | | | | | | |
| Receive and Process Database | | | | $ | 250 | $ | 250 |
| Additional Efforts to Finalize Settlement Data | | | | | *As Incurred* | | |
| **Initial Mailed Notice** | | | | | | | |
| CASS / NCOA / LACS Processing | | | | $ | 250 | | |
| Print and Mail Notice Package | 377 | Notices @ | $ | 1.50 | $ | 566 | |
| Postage - 1 Ounce First Class | 377 | Notices @ | $ | 0.46 | $ | 173 | $ | 989 |
| **Follow-up to Initial Notice** | | | | | | | |
| Receive Undeliverable Notices and Update Database | | | | $ | 250 | | |
| Address Trace | 38 | Traces @ | $ | 1.15 | $ | 43 | |
| Remail Notice Package | 40 | Notices @ | $ | 3.00 | $ | 119 | |
| Remail Postage - 1 Ounce First Class | 40 | Notices @ | $ | 0.46 | $ | 18 | |
| Reminder Mailing | | | | | | | |
| Reminder Postcard | 226 | Postcards @ | $ | 0.50 | $ | 113 | |
| Postage - Postcard Rate | 226 | Postcards @ | $ | 0.32 | $ | 72 | $ | 616 |
| **Telephone Support** | | | | | | | |
| Telephone Support | 6 | Months @ | $ | 300 | $ | 1,800 | |
| 800# Charges | 471 | Minutes @ | $ | 0.11 | $ | 52 | $ | 1,852 |
| - a minimum of $250 per month will be charged for telephone support | | | | | | | |
| **Claims Processing and Administration** | | | | | | | |
| Receipt, Process, and Validate Claim Forms | 339 | Claims @ | $ | 4.25 | $ | 1,442 | $ | 1,442 |
| *Additional Administrative Services Requested by Client* | | | | | | | *As Incurred* |
| **Fund Distribution** | | | | | | | |
| Print and Mail Payments | 339 | Payments @ | $ | 4.25 | $ | 1,442 | |
| Postage - 1 Ounce First Class | 339 | Payments @ | $ | 0.46 | $ | 156 | |
| Check Processing | 339 | Payments @ | $ | 0.20 | $ | 68 | |
| Monthly Bank Account Fee | 6 | Months @ | $ | 175 | $ | 1,050 | $ | 2,716 |
| **Tax Reporting** | | | | | | | |
| Annual Fee -Qualified Settlement Fund | 1 | Year @ | $ | 1,450 | $ | 1,450 | |
| Individual Income Tax Reporting (W2 & 1099) | 1 | Year @ | $ | 250 | $ | 250 | $ | 1,700 |
| **Project Management** | | | | | | | |
| Senior Vice President | 2 | Hours @ | $ | 225 | | *waived* | |
| Project Management | 60 | Hours @ | $ | 135 | $ | 8,100 | |
| Technical Consulting | 12 | Hours @ | $ | 155 | $ | 1,860 | $ | 9,960 |
| **Other Charges and Out-of-pocket Costs** | | | | | | | |
| | | | | | | $ | 400 |
| **Total Settlement Administration Estimate** | | | | | | **$** | **19,925** |



### Settlement Administration Estimate
### Shiosaka v State Farm Settlement
### April 12, 2013

Prepared by:
**Eric W Bishop**
**SVP, Client Services**
**612-359-2988**
**ebishop@rustconsulting.com**

## Terms and Conditions

All claims administration services to be provided by Rust Consulting to Customer shall be subject to the following terms and  conditions:

1. Services.  Subject to the terms hereof, Rust Consulting agrees to provide the Customer with claims administration services  (hereinafter, "Claims Services") as specified in the Proposal provided to Customer to which these Terms and Conditions are attached.

2. Term.  The terms of this agreement will remain in effect until completion of the Claims Services, unless earlier terminate d in accordance with Section 10 hereof.

3. Charges for Services.  Charges to the Customer for Claims Services shall be on a time and materials basis at our prevailin g rates, as the same may change from time to time.  Any fee estimates set forth in the proposal are estimates only, based on information provided by Customer to Rust Consulting.  Actual fees char ged by Rust Consulting to Customer may be greater or less than such estimate, and Customer shall be responsible for the payment of all such charges and expenses in accordance with Section 4 her eof.  Furthermore, Customer will be responsible for payment of all state and local sales and use taxes, if any, levied upon the charges payable by the Customer hereunder. Rust Consulting may d erive financial benefits from financial institutions in connection with the deposit and investment of settlement funds with such institutions, including without limitation, discounts on eligible ba nking services and fees, and loans at favorable rates.

4. Payment of Charges.  Payment by Customer of Rust Consulting's monthly invoices shall be due upon receipt thereof.  Amounts  unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law.  Decisions of the court and actions of the parties, in cluding disapproval or withdrawal of a settlement, do not affect the Customer's liability to Rust Consulting for payment of Claims Services.    Claims Services are not provided on a contingency  fee basis.

5. Confidentiality.  Rust Consulting agrees to implement and maintain reasonable and appropriate security measures and safegu ards to protect the security and confidentiality of Customer data provided to Rust Consulting by Customer in connection herewith.  Should Rust Consulting ever be notified of any judicial orde r or other proceedings in which a third party seeks to obtain access to the confidential data created by or for the Customer, Rust Consulting will promptly notify the Customer, unless prohibited by  applicable law.  The Customer shall have the option to (1) provide legal representation at the Customer's expense to avoid such access or (2) promptly reimburse Rust Consulting for any of its costs,  including attorneys' fees, reasonably incurred in avoiding, attempting to avoid or providing such access and not paid by the entity seeking the data.  If Rust Consulting is required, pursuant to a  court order, to produce documents, disclose data, or otherwise act in contravention of the obligations imposed by this Agreement, or otherwise, with respect to maintaining the confidentiality, pr oprietary nature and secrecy of the produced documents or disclosed data, Rust Consulting will not be liable for breach of said obligation.

6. Standard Banking Procedures.  In accordance with Rust Consulting's standard banking procedures, Rust Consulting will estab lish a demand deposit checking account (i.e. non-interest bearing) for funds received related to a distribution, unless directed otherwise in writing by the parties or unless the settlement ag reement stipulates otherwise.  When directed to invest funds in an interest bearing or investment accounts, Rust Consulting intends to invest all funds in U.S. government backed securities, unless dire cted by the parties in writing or the settlement agreement or distribution plan to invest in other types of securities; however, even in cases where funds are temporarily placed in interest bearing or  investment accounts, funds will eventually be migrated to a demand deposit checking account prior to a fund distribution.

7. Rights in Data.  Rust Consulting does not convey nor does the Customer obtain any right in the programs, system data, or m aterials utilized or provided by Rust Consulting in the ordinary course of business in the performance of this Agreement.

8. Document Retention.  Unless directed otherwise in writing by Customer, Rust Consulting will destroy undeliverable notice m ail on the effective date of the settlement or the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Rust will maintain claim forms and oth er correspondence for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Rust Consul ting will retain all bank and tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

9. Limitation of Liability: Disclaimer of Warranty.  Rust Consulting warrants that our services will be performed with reason able care in a diligent and competent matter.  Our sole obligation will be to correct any non-conformance with this warranty.  Rust Consulting shall not be liable, whether under theories of contract, neglig ence or other tort, statutory duty or other theories of liability in an amount exceeding the total charges to the Customer for the specific work affected by the error or omission.  Rust Consulting  will not be liable for any incidental, special, indirect, consequential or exemplary damages of any kind; or for any lost profits, lost opportunities, business interruption or for any liability incurr ed by the Customer or others to any third party. THE WARRANTIES SET FORTH HEREIN ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMIT ED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE FOR PARTICULAR PURPOSE.

10. Termination.  The Claims Services to be provided under this Agreement may be terminated, at will by the Customer upon at  least 30 calendar days' prior written notice to Rust Consulting.  The Customer's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue througho ut that 30 day period.  Rust Consulting may terminate this Agreement (i) with 10 calendar days' prior written notice, if the Customer is not current in payment of charges or (ii) in any event, upon  at least 3 months' prior written notice to the Customer.

11. Notice.  Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by  registered mail, postage prepaid, or overnight courier service to the responsible officer or principal of Rust Consulting or the Customer, as applicable, and shall be deemed given when so deliver ed personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service.

12. Force Majeure.  To the extent performance by Rust Consulting of any of its obligations hereunder is substantially prevent ed by reason of any act of God or by reason of any other matter beyond Rust Consulting's reasonable control, then such performance shall be excused and this Agreement, at Rust Consulting's option,  be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

13. Nonwaiver of Rights.  No failure or delay on the part of a party in exercising any right hereunder will operate as a wai ver of, or impair, any such right.  No single or partial exercise of any such right will preclude any other or further exercise thereof or the exercise of any other right.  No waiver of any such right wi ll be effective unless given in a signed writing.

14. Jurisdiction.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicab le case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement.  The parties hereto hereby irrevocably and unconditional y waive any objection to the laying of venue of any such suit, action or proceeding in the Court.

15. Survival.  All accrued payment obligations hereunder, any remedies for breach of this Agreement, this Section and the fol lowing Sections will survive any expiration or termination of this Agreement: Section 7 (Rights in Data); Section 5 (Confidentiality), Section 9 (Limitation of Liability; Disclaimer of Warrant y), and Section 14 (Jurisdiction).

16.  Entire Agreement.  These Terms and Conditions and the proposal embody the entire agreement between the parties with resp ect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are ex pressly incorporated herein.  No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized r epresentative.